## Ex Parte Heffren.

MURDER.—HABEAS CORPUS.—BAIL.—Upon the hearing of an application by a person under indictment for murder in the first degree to be admitted to bail, the burden is upon him to show that the proof of his guilt is not evident.

SAME.—In order to show this, he must produce the evidence upon which the State intends to rely for a conviction. He may, however, cross-examine or impeach the witnesses testifying against him.

SAME.—APPEAL.—On an appeal from a decision below, adverse to the application to be admitted to bail, the finding of the judge below is not entitled to the same weighty effect as if it had been a finding on the final trial of an ordinary cause. The Supreme Court will weigh the evidence without regard to the finding below.

SAME.—On the application of A, who was indicted for the murder of B, to be admitted to bail, the evidence showed that A shot B with a pistol, in a whisky saloon, in the presence of the father and a brother of the deceased, who, with the deceased and the prisoner, were the only persons in the saloon. The prisoner was uninjured when he entered the saloon, and when he came out he had two pistol shot wounds in his head. Five shots were heard in the saloon, of which the prisoner fired four only. As he ran out of the saloon, a shot was fired at him by some one in the saloon. The father and brother of the deceased testified that the shooting was all done by the prisoner; that no shots were fired at him, and that the homicide was without provocation.

*Held*, that the case made by the evidence was not one in which the proof of guilt was evident, and that the prisoner was entitled to be admitted to bail.

APPEAL from the Judge of the *Washington* Common Pleas.

FRAZER, J.—*Heffren*, being indicted and in custody for murder in the first degree, for the killing of one *Johnson*, sued out a writ of *habeas corpus* for the purpose of being let to bail. Upon the return to the writ, the issue of fact formed and tried was whether the proof was evident and the presumption strong that the prisoner was guilty of murder. The judge found the issue against him and remanded him to jail, and he appeals to this court.

Upon the hearing below, the prisoner was required to begin the evidence. This necessarily imposed upon him the necessity of producing the evidence upon which the State intended to rely for his conviction on the final trial. This ruling is complained of. We think it was correct. The indictment against him for a non-bailable offense, *prima facie*, justified his detention in prison. He undertook to show that he had a constitutional right to be let to bail, *i. e.*, that the proof of his guilt was not evident. This could only be shown by exhibiting that proof. In being required to do this, it did not follow that he lost the right

of cross-examining the witnesses testifying against him. They were not his witnesses, in any sense in which the rule prohibiting a party from cross-examining or impeaching his own witnesses could be applicable. The reason of the rule did not exist, and it would have been a grave error to have enforced it. But it does not appear by the record that the privilege of cross-examination was denied.

The views already expressed seem to us necessarily to result from the nature of the question to be examined, the effect of the indictment, justifying the imprisonment in the first instance, and the demands of fairness in the investigation. So far as we are aware, the books are barren of authority upon the subject. But the question most pressed is, whether the evidence disclosed a case in which the proof of guilt of a non-bailable offense was so clear that the defendant was not entitled to be let to bail. In alluding to the evidence it is desirable, though difficult, and perhaps impossible, to exhibit the reasons which conduct us to a conclusion, without pre-occupying ground which, upon the final trial, must necessarily be traversed by the jury. But we cannot avoid our duty, and the manner of its discharge ought not, in the slightest measure, to influence them, when, under oath, they shall be required to make up a verdict, it may be, from precisely the same evidence.

Before referring to the evidence, it is important to inquire whether, in this case, we are to deem the finding of the judge below as having the same weighty effect as if it had been a finding on the final trial of an ordinary cause, and are therefore to forbear to weigh the evidence and to judge at all of its credibility. This is claimed, for the State, to be the rule for our guidance, while for the prisoner it is urged that our duty is analogous to that existing in cases in chancery, where the appellate court must pass upon the evidence for itself, paying little attention to the finding below. This, too, is, so far as we know, a question upon which the reported cases are silent. The chief reason for the practice of appellate courts in chancery causes does not, we think, exist here.

The evidence of witnesses in that class of cases was required to be presented in the form of depositions, the witnesses not appearing in court. The appellate tribunal possessed every facility and opportunity for judging of the credibility of the witnesses that was had by the chancellor below. Then, too, it was as competent as he to weigh the evidence. It would have been a rule without a reason, which would have restrained the appellate court from being guided, in every respect, by its own independent judgment of the evidence. But in a common law cause, the finding of twelve intelligent men, drawn from various places and engaged in different avocations, was deemed of greater weight. It was the sworn concurrence of twelve competent minds, each deemed capable of weighing, judging of human veracity and determining. The jury was, in the judgment of the common law, an institution better fitted for determining questions of fact than a judge. When the parties agree to waive a jury, they substitute a judge therefor, and his finding ought, therefore, to be as binding upon them, in all things, as the verdict of a jury.

This case differs from one in chancery, in the important particular that here the judge below had the witnesses personally before him, could observe what manner of people they were, and their manner of testifying, and could thus legitimately receive impressions which cannot be made by the cold letter of a bill of exceptions. As to the credit due to a witness, he had opportunities of judging which cannot be brought within our reach, and therefore, upon that subject, there is much the same reason for deference to his finding that makes it due to the verdict of a jury, and for the purpose of attaining correct results, it ought to be accorded. But this court is composed of four judges, each of whom may, in legal contemplation, be deemed as capable of weighing unquestioned evidence, and drawing correct conclusions therefrom, as the single judge below. If the four, concurring in a conclusion thus derived, should yield it, because the one determined otherwise, this, too, would be

a rule without a reason to support it.   Upon that matter, we are therefore of opinion that we must weigh the evidence for ourselves.   If, in establishing this rule in appeals in *habeas corpus* cases under our statute, we shall err, and if thereby it shall happen that in some cases parties shall be let to bail who shall not be entitled to it, the result will be better than if, under the opposite rule, any to whom the constitution has secured the right of liberty upon bail, shall be deprived of it, and held in prison to await their trial and acquittal.

The evidence discloses that the prisoner shot the deceased, *Johnson*, in a whisky saloon, in the presence of the father and a brother of the latter, and that the three *Johnsons* and the prisoner, between whom and the *Johnsons* a feud had existed, were the only persons in the saloon.   No one had shot the prisoner before he went into the saloon, and yet when he came out the plain physical fact was that he had two pistol balls in his head, on the left side, ranging backwards and slightly upwards.   While he was in the saloon, he fired four times only, and yet at least five shots were distinctly heard there by several disinterested witnesses.   Just as he ran out, a shot was fired at him by some one in the saloon, and he wheeled and returned the fire, and immediately exclaimed, "they have shot me," and, "who would not shoot that had been shot at twice."   Five barrels of the prisoner's revolver were found to be empty, the sixth loaded.   A ball extracted from his head was found to be of the exact weight used for such a pistol as one of the *Johnson's* owned, and much lighter than the caliber of the prisoner's weapon required. The foregoing facts seem to be established by overwhelming evidence, and are not directly disputed, except that the elder *Johnson*, who was intoxicated at the time, testifies that only four shots were fired in the saloon.   The two surviving *Johnsons* swear that the shooting in the saloon was all done by the prisoner; that no shots were fired at him, and that the homicide was without provocation at the time. Such is the body of the evidence.

Dispassionately weighing this evidence, and assuming that the manner and bearing of the *Johnsons* as witnesses was such as to justify the opinion that they meant to tell the truth, yet how can it be said that "the proof is evident?" Who shot the prisoner? The *Johnsons* only had the opportunity to do it. The two survivors swear that they did not, and that the deceased did not. But the fact is stubborn and patent that it was done in the saloon, if human testimony can be relied on at all. May not the surviving *Johnsons* be mistaken as to what the deceased did? They are mistaken about something, for in that saloon, at that time, the prisoner received the two balls in his head, and yet they did not see them fired. Is it "evident" that the deceased did not first fire at the prisoner? Are there not strong doubts about his guilt of murder? These questions are not difficult to answer. The case shown by the evidence, giving the surviving *Johnsons* the utmost credit for veracity, as the court below must have done, and yet allowing the other undisputed facts to have any weight whatever, is one, in our judgment, in which the proof is not evident.

The prisoner is, therefore, entitled to be let to bail, by a plain provision of the constitution of the State. We have no authority to fix the amount, but, short of being excessive, it should be fixed at such a sum as will be likely to secure his presence to be tried on the indictment.

The judgment is reversed, and the cause remanded, with directions to the judge of the Court of Common Pleas to let the prisoner to bail.

RAY, C. J.—I do not feel prepared to concur in so much of the ruling in this case as requires the petitioner to assume the burden of showing that he is entitled to be admitted to bail.

*D. W. Voorhees, C. L. Dunham* and *R. W. Thompson*, for appellant.

*D. E. Williamson,* Attorney General, for the State.