## Ex parte J. B. Scoggin.

1. Habeas Corpus — Practice. — When the return to a writ of *habeas corpus* shows that the applicant is in legal custody, under an indictment for a capital offence, it is incumbent on the applicant to show that he is entitled to bail; and if he introduces no evidence, bail should not be allowed him.

2. Same. — The proper practice in such cases is for the applicant to offer his evidence before any is requisite from the respondent or the State.

Habeas Corpus, on appeal from a judgment in chambers, rendered by the Hon. J. Abbott, Judge of the Twenty-eighth Judicial District, and refusing bail to the appellant.

The indictment, filed June 29, 1878, charged the appellant with the murder of William Gerrard, in Johnson County, on March 15, 1874.

The testimony goes to show that, on the morning of January 24, 1875, the body of an unknown man was found about four miles north of the town of Cleburne, in Johnson County, Texas. The witness Hix relates that, about ten or fifteen minutes after sunrise on that day, he heard two shots, very close together. He went in the direction from whence the shots proceeded, and found the body near Allard's field. Death was evidently caused by a gun or pistol-shot wound. The ball entered behind the right ear, and ranged around toward the left eye. Near by was found a memorandum-book, some of the leaves of which the witness recognized as those now exhibited. A small phial of medicine, bearing the label of a Cleburne drug firm, was also found near the body. Witness also judged, from appearances, that a horse had been lariatted near where the body was found. The justice of the peace who held the inquest substantially corroborated this witness, adding that the feet of the deceased lay near where a fire had been built. This witness did not hear the shots, and did not reach the body until about ten o'clock that day. No witness identified the deceased. The

date of finding the body, January 24, 1875, was fixed by John B. Hudson and W. H. Graves.

A leaf from the memorandum-book, identified by Hix as the one found near the body, was introduced. It read as follows : —

"Johnson Co., Tx., Jan. the 24, 1875.

"As this may bee the last penciling that I may ever do on earth, May heaven Bless me, and the man that I am going to fite, for we have been travling to geather some time and have fell out a bought the sum of $25, and have agreed to fight a dewel this Butiful night of our lord, and as one of us has to die May heven bless us as this is the last half hour on earth with one of us, heaven Preserve me now and forever — written by Jesse Scog——, Bornd and rased in Tx. Sined by Wiliam Jirod, Bornd in Illinois."

John B. Hudson testified that he saw the defendant sign his name to the application for this writ of *habeas corpus*, and had seen him sign several school-vouchers. The witness is of opinion that the writing in the leaves of the memorandum-book is in the hand of the defendant. F. O. Adams testified to the same belief, stating that, though not an expert, in the technical meaning of that term, he has, during his several years of service in the offices of the district and county clerks, become familiarized with handwriting, and had often practised comparison of handwriting of different persons with specimens he knew to have been written by such persons. In his opinion, the writing in the memorandum-book was written by the person who signed the application for this writ of *habeas corpus*.

The substance of the testimony of McBreer was that, in January, 1875, about the latter part of the month, defendant came to Hensley's house, in Bosque County, and stayed there from Thursday until Saturday morning, when he left. On the next morning (Sunday), very early, between daylight and sunrise, witness again saw defendant, back of the said Hensley's place. He was across the ravine from wit-

ness, about one hundred yards distant, and afoot. Witness called to him, and invited him to come across and get breakfast, but he answered that he would " go on with George." The witness saw no more of defendant, who was then travelling with George Circle, until he saw him here in court. Within two or three days after seeing him, as last stated, witness heard of the killing of a man near Cleburne, and that defendant was suspected. Thomas Tooly was with this witness at the last interview mentioned; and, being introduced, corroborated his evidence, except that some seven or eight days had passed from that Sunday before he heard of the finding of the body, and the suspicion against defendant.

G. W. Hensley, whose wife is the half-sister of defendant's father, testified to the presence, at his house, of the defendant from Thursday until Saturday, as stated by the last two witnesses; and adds that he was in company with a young man named Charley Henderson, and that when the two left, on Saturday, as stated, they said they were going to Cleburne, some eighteen miles. Heard on Sunday that defendant had passed by his house and taken breakfast with George Circle, and in two or three days heard of the finding of the body, and that defendant was suspected.

J. P. Aiken testified that he thought he saw defendant in Cleburne once, in January, 1875. He was there trying to sell a horse. It was on Saturday, and he had a young man with him, — the same that was found dead the next morning.

Witness Stephens, on having defendant pointed out to him, thinks he is the man to whom he sold a small yellow filly, in Cleburne, on January 24, 1875. Referring to his memoranda, he discovers that the young man gave his name as J. B. Scoggin.

Frank Hensley saw the defendant in January, 1875, on Saturday, about one-half mile north of Cleburne. Witness overtook him, going north. He was walking, and another

young man soon rode up, and after a little while witness and the other young man rode on ahead. Presently the young man stopped, to wait for defendant. He was the same young man who was found dead next morning. Defendant had a pistol.

W. R. Goocher, J. P. Hall, and Sam Hall testified that they were well acquainted with the reputation of the defendant in the community of his residence. It was good before, at the time, and since the commission of this offence.

*DeBerry & Smith,* for the appellant. This is an appeal taken from the order of the district judge refusing the applicant bail, on the hearing of his petition therefor, in Johnson County, on the twenty-eighth day of April, 1879.

Attention is directed to the first bill of exceptions, which shows to the court that the applicant was forced by the district judge to show himself entitled to bail, and to take upon himself the burden of proof for that purpose, and first to introduce his evidence. The effect of this ruling is to declare that, whenever an indictment has been found, *capias* issued, and returned " executed " by arresting the defendant and confining him in jail, the charge being murder in the first degree, the defendant is legally imprisoned, and is not entitled to bail unless, by proof, he can show that he is entitled to the benefit of the general rule of giving bail to all citizens of this State. The distinction did not seem to occur to the district judge that in this case the applicant was invoking a general rule, which is one of right prescribed by our Constitution (p. 3, sect. 11, art. 1), which is in the following language: "All prisoners shall be bailable by sufficient sureties, unless for capital offences when the proof is evident; but this provision shall not be so construed as to prevent bail after indictment found, upon examination of the evidence, in such manner as may be prescribed by law."

It is admitted that, if the applicant desired the benefit

of an exception, the rules of evidence would force upon him the burden of proof; but it is respectfully submitted that, in this case, the applicant calls to his aid the general rule, which has an exception, and that exception the State must show to exist in this particular case, or the applicant is entitled to bail. It is very true that the applicant must apply for the writ of *habeas corpus;* his failure to do so would be a waiver of his right.

It is scarcely necessary to observe that the law prescribes no manner for the examination of the evidence in cases of this kind. Perhaps the only sections of the criminal statutes on this subject are arts. 2624–2626, Paschal's Digest. It has been held by courts of this State that the indictment is not a presumption or evidence of guilt. If this be true, it is difficult to understand in what manner the arrest of a party, or the return of the officer making the arrest indorsed on the *capias*, — a *capias* issued by virtue of that identical indictment, — could be a presumption of guilt, so as to prevent bail.

This case, however, does not depend upon a decision of this question. It is one of practice, and the settlement of it one way or the other would be of great convenience and of real benefit in the disposition of criminal cases of this character.

This case is to be decided upon all the evidence introduced by the applicant and by the State.

It is submitted that, in the case of *Ex parte Foster*, 5 Texas Ct. App. 625, this court has construed the meaning of the words, " when the proof is evident," and has established the rule by which this court in future will be governed. This is the last case on this subject which has been in any manner reported. The applicant, under the rules established in this case, is entitled to bail.

This case declares that, if the " court would not set aside a verdict of the jury for murder in the first degree, then in that case bail should be refused." Now, apply the rule

to this case.   The indictment charges Jesse B. Scoggin with killing W. M. Gerrard, on the fifteenth day of March, A. D. 1874.   It is submitted, first, that the proof does not show that W. M. Gerrard is dead.   So far as this case is concerned, he is alive and well to-day.   No witness testified that he knew W. M. Gerrard, or any thing about him.   No witness testified that he knew the deceased, or what his name was.   It seems that it is competent, under the order of the district judge in this case, to refuse a party bail under an indictment for killing Peter Jones, when the evidence only shows that a dead body has been found, a year after the alleged killing of Peter Jones is said to have been done, and no name at all given by the evidence to the dead party.

There is no evidence that the applicant ever knew W. M. Gerrard, or was ever with him.

There may be, perhaps, some evidence to show that the applicant was in Cleburne, Texas, on the day before the finding of a dead body, on the twenty-fifth day of January, 1875, four miles north of Cleburne, Texas, and was with the dead man; but there is certainly no evidence that this is the man W. M. Gerrard.

It is clear that the defendant is not charged with killing the man whose dead body was found on the Sunday morning, the 25th of January, A. D. 1875, four miles north of Cleburne; for this body was found almost a year after W. M. Gerrard is alleged to have been killed.

The evidence shows—if, indeed, there is any thing it does show—that the man whose dead body was found on the 25th of January, 1875, was killed on Sunday morning of that day before sun-up, and that the pistol which killed him was heard at or about that time by the witness Hix; and that the dead body was found ten or fifteen minutes after sun-up, still warm, and warm blood running from the wound, and that the morning was a cold one.

On this same day, at this identical hour, the evidence

shows that this applicant was eighteen miles from the place of the killing. This is positively sworn to by two witnesses, McBreer and Thomas Tooly. It is impossible for this applicant to have been at two places, eighteen miles apart, at the same time; and eighteen miles, it is *surmised*, is a greater distance than the ordinary gun and pistol will carry their missiles.

Therefore the proof is not evident that this applicant killed the man whose dead body was found as before stated.

The only facts that connect this applicant with the killing of the 25th of January, 1875, are the statements that are made by the witness Aiken, that applicant was seen in Cleburne, on the Saturday before the body was found (on Sunday), with the man who was killed. The time of day is not stated. The statement of the witness F. W. Hensley is to the same effect, save that the place was one-half mile north of Cleburne. Neither does this witness state the time of day; and the fact appears that some leaves from a memorandum-book were found on the ground, signed by Jesse Scoggins and William Jirod. This is not the name of the applicant, nor the name of W. M. Gerrard. But the witness John B. Hudson says that he has seen the defendant sign his name to the application for writ of *habeas corpus*, and had seen him sign perhaps four school-vouchers within the last few weeks, and, in the opinion of witness, the handwriting on the leaves of the memorandum-book is the handwriting of applicant. It is certainly more probable that this witness is mistaken than that the applicant killed a man by shooting at him about eighteen miles. Hence this testimony is not evident proof, even of the killing. Especially is this so, as the witness Hudson does not show who he is; and that he can read writing, or can even write. He does not show that he is a judge of handwriting. The presumption is that, if he can read and write, he is not in the habit of comparing handwriting; for an informed man would be very loth to give even an

·opinion in such a positive manner, in such an important case, with such a slight basis for his information. Think of it. The writing on the memorandum-leaf was written over four years ago. After the lapse of all that time, this witness has seen applicant sign his name only four times. This does not override the positive and unequivocal testimony of McBreer and Tooly.

Now, for the sake of argument, admit that McBreer and Tooly are mistaken. The only object of the State in introducing the leaves from the memorandum-book would be to show the presence of the applicant at the killing; and the instrument, being signed by both parties, could be construed only as an agreement to fight a duel; and that would be manslaughter, and is bailable. Pasc. Dig., art. 2264.

*Thomas Ball,* Assistant Attorney-General, for the State.

ECTOR, P. J.   This is an appeal from a judgment on writ of *habeas corpus,* rendered in chambers by the Hon. Joseph Abbott, judge of the Twenty-eighth Judicial District of the State. We deem it sufficient to say that, after a careful examination of the record, we do not believe the court below erred in refusing bail to the applicant.

Our attention is directed, in the brief of counsel for appellant, to his first bill of exceptions, which shows to the court that the district judge before whom the trial on the writ of *habeas corpus* was had, held that the applicant should introduce his evidence first, and show himself entitled to bail. As no uniform practice prevails among the district judges of the State, and as much time is often consumed in determining as to what is the proper practice in such cases, we deem it not amiss to state that we fully concur in the rulings of the court below on this point.

The indictment against him being for a non-bailable offence, *primâ facie* justified his detention in prison. He undertook to show that he had a constitutional right to be

admitted to bail, — *i.e.*, that the proof of his guilt was not evident.    This could only be shown by exhibiting the proof. *Ex parte Heffren*, 27 Ind. 87.

If it appears by the return and the papers attached that the party stands indicted for a capital offence, the statute provides that the judge or court shall nevertheless proceed to hear such testimony as may be offered on the part of the applicant and the State, and may either remand the defendant or admit him to bail, as the law and the case may justify.    The statute also provides that the applicant shall have the right to open and conclude, by himself or counsel, the argument upon the trial under *habeas corpus*.

We believe that when a person is brought before a court of competent jurisdiction on a writ of *habeas corpus*, if it appear by the return of the papers attached that he is indicted for a capital offence, it is incumbent on him to show that he is entitled to bail; if he declines to introduce any evidence, bail should not be allowed him.    And we also believe that the same rule applies when the return to the court shows that he is held by virtue of a commitment from an examining court, for a capital offence.

When it is shown that an applicant is held by a warrant of commitment, or a *capias* issued on an indictment for such an offence, it presupposes an examination into the facts, and throws the burden of proof upon him to show that his restraint is illegal, and that he is entitled to bail.    The judgment of the district judge of the Twenty-eighth District in refusing bail to applicant is affirmed.

*Affirmed.*