MASSA, Justice,
concurring in result and dissenting.
I agree with the majority insofar as it affirms the trial court’s decision to deny Fry bail, but I dissent from the majority holding that Ind.Code § 35-33-8-2(b) is unconstitutional. While I agree with Justice Rucker and join in his dissent, I write separately to reaffirm and support this Court’s past precedent and its long-standing adherence to an originalist interpretation of our state constitution.
We often cite the intent of the framers of our founding documents as a guiding principle of our jurisprudence, see, e.g., Snyder v. King, 958 N.E.2d 764, 772 (Ind.2011), Spickermon v. Goddard, 182 Ind. 523, 525, 107 N.E. 2, 3 (1914), State v. Denny, 118 Ind. 449, 458, 21 N.E. 274, 276 (1889), but rarely are we afforded the benefit of knowing exactly what the framers of our constitution were thinking when they penned the words to a specific provision. Indiana’s 1816 Constitution provided: “That all persons shall be bailable by sufficient sureties, unless for capital offenses, when the proof is evident, or the presumption great.” Ind. Const, of 1816, art. 1, § 14. When it came time to amend our Constitution 35 years later, the convention delegates discussed this provision extensively. See 2 Report of the Debates and Proceedings of the Convention for the Revision of the Constitution of the State of Indiana 1379 (1850). One member, Mr. Thornton of Floyd County, sought to amend it substantially. Id. He opposed the death penalty, disliked the implication connoted by the word “capital,” and hoped that one day the new General Assembly would abolish the death penalty entirely. Id. at 1379-80. Until that day, he believed, “bail should always be available,” but the “magnitude of the offense and circumstances of the crime” and of the offender should dictate the amount of bail set. Id.
Before a vote was taken, Mr. Gibson of Clark County offered an amendment to “perfect” the original language of the 1816 Constitution. Id. at 1381. He proposed the words “capital offenses” be stricken and replaced with the words “murder and treason,” which change was adopted by consent. Id. Mr. Gibson then proceeded to explain why the change proposed by Mr. Thornton was unacceptable. He called it “one of the most startling innovations that had ever been introduced in our system ... that a man who was willing to pay a sufficient price might commit murder with impunity.” Id. All that man would have to do is “pay the price at which the bail was fixed and then he might quietly put up his goods and leave the country.” Id. Mr. Thornton defended his amendment, arguing all offenses should be bailable in order to “advance the cause of personal liberty.” He then asked for a vote, *453 and his amendment was defeated ninety votes to nine. One of the nays came from delegate Horace Biddle, id. at 1382, about whom we will hear more later. Douglas B. Morton, “Horace P. Biddle,” in Justices of the Indiana Supreme Court 101-04 (Linda C. Gugin & James E. St. Clair eds., 2010). The murder bail provision, in its finally adopted form, read as follows: “Offenses, other than murder or treason, shall be bailable by sufficient sureties. Murder or treason shall not be bailable, when the proof is evident, or the presumption strong.” Ind. Const. art. 1, § 17 (1851). And so it still reads today.
The majority looks back to the first case in Indiana history to discuss the bail provision and determines it was wrongly decided. Ex parte Heffren, 27 Ind. 87 (1866) was handed down just fifteen years after the adoption of Indiana’s 1851 Constitution. Its author, Justice James Somerville Frazer, had been admitted to the Indiana bar for twenty-one years when he drafted Hejfren and served in Indiana’s House of Representatives both before and after the adoption of the 1851 Constitution. Donald B. Kite, Sr., “James S. Frazer,” in Justices, supra, at 69. Of the two justices that joined his opinion in full, Justice Jehu Tindle Elliott had served on the bench for twenty-two years at various levels and had spent three years in Indiana’s Senate. Greta Morris Scodro, “Jehu T. Elliott,” in Justices, supra, at 74-75. Justice Robert Crockett Gregory spent three years in the Senate and practiced law all his life. Bradford W. Sample, “Robert C. Gregory,” in Justices, supra, at 82. These men knew the framers of Indiana’s constitution and were intimately familiar with the discussions and debates of 1850-51, and they decided that the murder bail provision places the burden on the defendant to show the proof of guilt is not evident nor the presumption of guilt strong. Heffren, 27 Ind. at 88-89.
While several cases discussed the standard trial courts should apply to determine whether a defendant should be let to bail in a murder case, see Ex parte Moore, 80 Ind. 197 (1868); Ex parte Halpine, 30 Ind. 254 (1868); Ex parte Colter, 35 Ind. 109 (1871), none addressed Hejfren’s holding that a defendant had the burden to produce evidence to show the proof was not evident nor the presumption strong until Ex parte Jones, 55 Ind. 176 (1876). Jones held that the defendants, who were charged with murder and seeking to be admitted to bail, “assumed the burden of showing, by the evidence, that the proof of their guilt was not evident, and that the presumption of their guilt was not strong.” Id. at 180. Justice Howk drafted the opinion reaffirming Heffren. Id. at 176. Justice Horace P. Biddle, a lawyer, poet, and delegate to Indiana’s 1850 Constitutional Convention, joined Howk’s opinion and was one of the ninety votes to reject Mr. Thornton’s proposal to allow bail in all cases at an amount commensurate with the magnitude of the crime and circumstances of the defendant. Justice Biddle’s vote with the majority in Jones to reaffirm Hejfren further evinces the framers’ intent that in cases of murder or treason, the burden of proof of entitlement to bail, should rest upon the defendant.
The language of the Constitution, the convention debates, and the judicial and legislative history all demonstrate the purpose behind the murder bail provision. The framers specifically excluded those charged with murder or treason from the possibility of bail in most cases because of the seriousness of those crimes. They feared that if a defendant were admitted to bail, he may flee rather than face a judge or jury. Thus, only those defendants who could show they were likely innocent — who *454 could show the proof of guilt was not evident nor the presumption strong — should be let to bail.[1] While my colleagues may disagree with that policy, it is what the framers intended and what the Constitution says, and we are bound to uphold it until such time as the citizens of Indiana see fit to amend it.
I respectfully dissent.
RUCKER, J., concurs in result.

. Both the majority opinion and the Chief Justice’s concurrence are quite reasonably grounded in a desire to honor and adhere to the presumption of innocence enshrined in our criminal justice system. I agree that "the principle that there is a presumption of innocence in favor of the accused is the undoubted law, axiomatic and elementary, and its enforcement lies at the foundation of the administration of our criminal law.” Coffin v. United States, 156 U.S. 432, 453, 15 S.Ct. 394, 39 L.Ed. 481 (1895). I note, however, that tire federal Supreme Court has held that the presumption of innocence "has no application to a determination of the rights of a pretrial detainee during confinement before his trial has even begun.” Bell v. Wolfish, 441 U.S. 520, 533, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). In fact, in United States v. Salerno, 481 U.S. 739, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987), the Court upheld several provisions of the Bail Reform Act of 1984 allowing for preventive pretrial detention without bail for certain federal defendants and noted several instances in which "the Government's regulatory interest in community safety can, in appropriate circumstances, outweigh an individual’s liberty interest.” Id. at 751, 107 S.Ct. 2095; see also Ludecke v. Watkins, 335 U.S. 160, 173, 68 S.Ct. 1429, 92 L.Ed. 1881 (1948) (approving unreviewable executive power to detain enemy aliens in wartime); Moyer v. Peabody, 212 U.S. 78, 84-85, 29 S.Ct. 235, 53 L.Ed. 410 (1909) (rejecting due process claim of individuals jailed without probable cause by Governor in time of insurrection); Addington v. Texas, 441 U.S. 418, 432-33, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979) (holding the government may detain mentally unstable individuals who present a danger to the public upon a showing of clear and convincing evidence); Jaclcson v. Indiana, 406 U.S. 715, 738, 92 S.Ct. 1845, 32 L.Ed.2d 435 (1972) (holding the government may hold a person charged with a crime and committed solely due to incapacity for a reasonable period of time to determine whether he will attain the capacity to stand trial); Schall v. Martin, 467 U.S. 253, 104 S.Ct. 2403, 81 L.Ed.2d 207 (1984) (approving the post-arrest regulatory detention of juveniles when they present a continuing danger to the community); Gerstein v. Pugh, 420 U.S. 103, 114, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975) (holding that if the police suspect an individual of a crime, they may arrest him without a warrant as long as they promptly bring him before a neutral magistrate to determine whether they have probable cause to hold him); Bell, 441 U.S. at 534, 99 S.Ct. 1861 (noting an arrestee may be incarcerated until trial if he presents a risk of flight). While I acknowledge today's question is one of Indiana constitutional law, I find nothing in the Convention Debates or in our jurisprudence that dictates a contrary holding here. Indeed, where Indiana appellate courts have considered the interaction between the presumption of innocence and the right to bail, we have tended to agree with our federal colleagues. See, e.g., Hobbs v. Lindsey, 240 Ind. 74, 78, 81, 162 N.E.2d 85, 88-89 (1959) (stating that, although the accused enjoys the presumption of innocence prior to trial, he nevertheless must shoulder the burden to make a prima facie showing that the trial court has set his bail excessively high in violation of Ind. Const. art. 1, § 16, and only if he meets that burden must the State "show the necessity or justification for the unusual amount of bail required”); see also Mott v. State, 490 N.E.2d 1125, 1130 (Ind.Ct.App.1986) (holding that trial courts are free to consider the potential penalty when setting bail and that such a consideration "does not impinge the presumption of innocence”).