ATTORNEY FOR APPELLANT
Jim Brugh
Logansport, Indiana

ATTORNEYS FOR APPELLEE
Gregory F. Zoeller
Attorney General of Indiana

Ellen H. Meilaender
Deputy Attorney General
Indianapolis, Indiana



# In the
# Indiana Supreme Court

No. 09S00-1205-CR-361

LOREN HAMILTON FRY,

*Appellant (Defendant below),*

v.

STATE OF INDIANA,

*Appellee (Plaintiff below).*

Appeal from the Cass Superior Court, No. 09D02-1109-MR-2
The Honorable Rick Maughmer, Judge

On Direct Appeal Pursuant to Indiana Appellate Rule 4(A).

**June 25, 2013**

**David, Justice.**

The Indiana Constitution provides a qualified right to bail, exempting murder and treason from that right when "the proof is evident, or the presumption strong." For nearly 150 years, every time we have addressed the issue in the context of a murder charge, this Court has held that the defendant must carry the burden of demonstrating that the proof is not evident and the

presumption not strong, and that he is thus entitled to bail. And the Indiana General Assembly has codified this constitutional provision and our jurisprudence into the Indiana Code.

A criminal defendant now charged with murder challenges the constitutionality of the statutory provision assigning him the burden of showing he is entitled to bail. After due consideration, today we hold that the burden must be placed upon the State to prove the defendant should be denied bail. Nevertheless, given the facts and circumstances of this particular case we affirm the trial court's decision denying the defendant bail.

## Facts and Procedural History

In September 2011, Loren Fry was arrested in Cass County, Indiana, and charged with the murder of David Schroder. Fry filed a motion seeking bail, claiming that the State's evidence against him was circumstantial and therefore the presumption of his guilt was not strong. He simultaneously filed a motion seeking a declaration that Indiana Code § 35-33-8-2(b), which places on a defendant charged with murder the burden of proving why he or she should be admitted to bail, is unconstitutional.

Judge Maughmer ordered the State to present evidence that the proof was evident, or the presumption strong, that Fry committed the murder; thereafter, the statutory burden would shift to Fry to convince the court that he should be admitted to bail. To the extent the statute might operate otherwise, Judge Maughmer said, it would be unconstitutional.

After a hearing pursuant to his instructions, Judge Maughmer denied Fry bail. Fry appealed directly to this Court, seeking review as to both the constitutionality of § 35-33-8-2(b) and the denial of his request for bail. See Ind. Appellate Rule 4(A)(1)(b) (providing Supreme Court mandatory and exclusive jurisdiction over appeals of final judgments declaring state statutes unconstitutional).

**Standard of Review**

When reviewing a challenge to the constitutionality of a statute, we observe a high level of deference to the legislature's decision-making. Collins v. Day, 644 N.E.2d 72, 80 (Ind. 1994). The statute or regulation is presumed to be constitutional "until clearly overcome by a contrary showing." Boehm v. Town of St. John, 675 N.E.2d 318, 321 (Ind. 1996); see also Collins, 644 N.E.2d at 80. The challenging party bears the considerable burden of proving this contrary showing, and any doubts are resolved against that challenge. Ledbetter v. Hunter, 842 N.E.2d 810, 815 (Ind. 2006); Boehm, 675 N.E.2d at 321.

## I. Constitutionality of Indiana Code § 35-33-8-2(b)

The right to bail is "a traditional and cherished right." Bozovichar v. State, 230 Ind. 358, 361, 103 N.E.2d 680, 681 (1952). It "prevents the infliction of punishment prior to an adjudication of guilt and permits the unhampered preparation of a defense." Id. Its purpose is therefore not punitive, but instead it guarantees a defendant will be present to stand trial on his charges.[1] Phillips v. State, 550 N.E.2d 1290, 1294 (Ind. 1990). "The right to freedom by bail pending trial is an adjunct to that revered Anglo-Saxon aphorism which holds an accused to be innocent until his guilt is proven beyond a reasonable doubt." Hobbs v. Lindsey, 240 Ind. 74, 79, 162 N.E.2d 85, 88 (1959). "Unless that right is preserved, the presumption of innocence, secured only after centuries of struggle, will lose its meaning." Bozovichar, 230 Ind. at 361, 103 N.E.2d at 681.

---

[1] In certain instances, bail may be set with the goal of preventing physical harm to the community. See Ind. Code § 35-33-8-1; see also U.S. v. Salerno, 481 U.S. 739, 753–54 (1987) ("Nothing in the text of the Bail Clause [of the Eighth Amendment] limits permissible Government considerations solely to questions of flight.").

That the right to bail is so deeply valued, however, does not mean that it is unqualified. The Indiana Constitution specifically provides that "[o]ffenses, other than murder or treason, shall be bailable by sufficient sureties. Murder or treason shall not be bailable, when the proof is evident, or the presumption strong." Ind. Const. art. 1, § 17.[2] We have thus said that "as a general rule, murder and treason shall not be bailable," *except* "in either one of two cases: 1st. When the proof is not evident; 2d. When the presumption is not strong." Ex parte Jones, 55 Ind. 176, 179 (1876). "In either one of these two separate and distinct cases, the offence shall be bailable." Id.

This qualification was proper because murder is "the most serious charge that can be lodged by this state against an individual and carries with it the possibility of the imposition of a sentence of death, society's harshest penalty," Phillips, 550 N.E.2d at 1294–95, and the purpose of bail would likely be disserved by an unqualified right in such a case. "Given the seriousness of the charge and the severity of the consequences that could potentially attach, the likelihood that an accused person would appear for trial if let to bail is sufficiently doubtful that an initial presumption that no monetary sum could provide an adequate assurance of attendance at trial" is appropriate. Id. at 1295.

We have also long-held that the burden is placed upon the defendant to show that either of those two separate and distinct circumstances exist—i.e., to show that in his murder case the proof is not evident, or the presumption not strong. Bozovichar, 230 Ind. at 366, 103 N.E.2d at

---

[2] There is no corresponding Federal "right to bail," only the Eighth Amendment's prohibition against excessive bail. U.S. Const. amend. VIII. That means when the Government's aim is the prevention of the defendant's flight, "bail must be set by a court at a sum designed to ensure that goal, and no more." Salerno, 481 U.S. at 754. However, when pretrial detention is based on an interest other than ensuring the defendant's appearance at trial—such as when the defendant poses a threat to the community—even the Eighth Amendment does not *require* the grant of bail. Id. at 754–55.

4

683; see also Ex parte Jones, 55 Ind. at 180; Ex parte Heffren, 27 Ind. 87, 88 (1866). However, the presumption against bail in a murder case—and the defendant's corresponding burden to show otherwise—is only permissible under the Constitution "so long as that person is afforded the type of procedural due process hearing that will guarantee that bail is not denied unreasonably or arbitrarily." Phillips, 550 N.E.2d at 1295.

In 1981, the General Assembly codified this case law into § 35-33-8-2, which states, "(a) Murder is not bailable when the proof is evident or the presumption strong. In all other cases, offenses are bailable. (b) A person charged with murder has the burden of proof that he should be admitted to bail." Ind. Code § 35-33-8-2. Fry challenges subsection (b) of this statute, and, by extension, our prior case law.

He argues that the subsection is unconstitutional because "there is a constitutional presumption in favor of innocence and in favor the right to bail, while this statute removes those presumptions by placing the burden upon the person charged." (Appellant's Br. at 10–11.) In essence, he disagrees with the premise that there is an inherent presumption *against* a right to bail in murder or treason cases under Article 1, § 17. Instead, he argues, the provision's second sentence simply states that murder and treason shall not be bailable when the proof is evident or the presumption strong—but it says nothing about who carries the burden of showing that to be the case. His view is that this burden should be on the State, just as it is to ultimately prove guilt beyond a reasonable doubt.

## A. *The Indiana Approach*

A cold reading of the plain language of Article 1, § 17, shows that Fry is at least partly correct: the provision makes no allocation of the burden for either showing that the proof is

evident or the presumption strong, or showing that it is not. That interpretation—and the resulting codification in § 35-33-8-2(b)—is almost purely a result of this Court's cases.[3]

However, a review of those cases shows two important features that explain why we reached that result. First, our analysis was composed in the context of criminal cases that began with an indictment of the defendant by a grand jury. See Heffren, 27 Ind. at 87; see also Caudill v. State, 262 Ind. 40, 40, 311 N.E.2d 429, 429 (1974); Bozovichar, 230 Ind. at 360, 103 N.E.2d at 681; McAdams v. State, 196 Ind. 184, 185, 147 N.E. 764, 764 (1925); State v. Hedges, 177 Ind. 589, 589, 98 N.E. 417, 417 (1912); Brown v. State, 147 Ind. 28, 29, 46 N.E. 34, 35 (1897); Schmidt v. Simmons, 137 Ind. 93, 93, 36 N.E. 516, 516 (1894); Ex parte Kendall, 100 Ind. 599, 600 (1885); Jones, 55 Ind. at 177. And it was in that context that we first said that a grand jury indictment for murder was, prima facie, sufficient to overcome what otherwise might be a presumptive right to bail. Heffren, 27 Ind. at 88; Jones, 55 Ind. at 180.

In our country, the grand jury has an "ancient role" in "determining if there is probable cause to believe that a crime has been committed" and a related responsibility of "protecting citizens against unfounded criminal prosecutions." Branzburg v. Hayes, 408 U.S. 665, 686–87 (1972). "[I]ts task is to inquire into the existence of possible criminal conduct and to return only well-founded indictments." Id. at 688. "Historically, this body has been regarded as a primary security to the innocent against hasty, malicious and oppressive persecution; it serves the invaluable function in our society of standing between the accuser and the accused." Wood v. Georgia, 370 U.S. 375, 390 (1962). Its responsibility is "to determine whether a charge is

---

[3] We acknowledge the State's point that the citizens of Indiana have not undertaken to establish a different interpretation through an amendment to Article 1, § 17, and the General Assembly's codification of our case law indicates a degree of legislative acquiescence. But at the same time, the State concedes that "Indiana Code Section 35-33-2-8 simply reiterates what this Court has said with regard to Section 17." (Appellee's Br. at 17.)

founded upon reason or was dictated by an intimidating power or by malice and personal ill will." Id.

Because of this protective function, grand juries are afforded a special level of deference in our judicial process. Grand jurors are charged by oath and have broad statutory powers to investigate potential criminal conduct—either at their own direction or at the direction of the county prosecutor. Coons v. State, 191 Ind. 580, 589, 134 N.E. 194, 197 (1922). They have the power to compel evidence and witnesses, and when an indictment is returned as a true bill in open court "it is conclusive evidence of the regularity of the finding, and that the proper number concurred therein, and the same cannot be controverted by plea, and it is not competent to inquire into the amount or kind of evidence upon which they acted." State v. Comer, 157 Ind. 611, 615, 62 N.E. 452, 453 (1902). Thus, that we afforded great weight to indictments for murder in analyzing bail requests is not surprising.

But regardless of the great weight we gave to grand jury indictments, such indictments could not, standing alone, support a complete assignment of the burden of proof to the defendant. That determination, we believe, also originated in the second distinct feature of the cases: that our analysis was made in the context of habeas corpus proceedings in which the defendants had filed petitions seeking release from pre-trial detention. See Ex parte Richards, 102 Ind. 260, 260, 1 N.E. 639, 640 (1885); Kendall, 100 Ind. at 600; Jones, 55 Ind. at 177; Heffren, 27 Ind. at 88.

Habeas corpus "is an ancient common law remedy for imprisonment without just cause, the origin of which is obscure by reason of its great antiquity." State ex rel. Allen v. Fayette Cir. Ct., 226 Ind. 432, 434, 81 N.E.2d 683, 683 (1948). "By virtue of its recognition in the Bill of Rights of the Constitution of Indiana, the privilege of the writ exists independent of the statute and flows from our constitution for the protection of all whose liberty may be restrained under unlawful authority," although its functioning may be reasonably regulated by the Legislature. Id. at 435, 81 N.E.2d at 684. A petitioner is entitled to the writ only if he is entitled to be

7

immediately released from unlawful incarceration. Jennings v. State, 270 Ind. 699, 700, 389 N.E.2d 283, 284 (1979).

Although it is obvious that the habeas petitioner initiates the action, just who bears the burden of proof in the actual proceeding itself depends somewhat upon the nature of the claim being made. In some instances, the burden is on the responding party.[4] And certainly the habeas procedures allow—and always have—for a trial judge to hear the petition and, on its own authority, investigate the case and order witnesses to testify.[5] Most frequently, however, the burden is initially placed upon the one seeking release.[6] This is also true for federal habeas petitions.[7]

The Heffren Court either took this latter view and assigned the defendant the burden of proof from the outset as a habeas petitioner or, in light of the weight given to the grand jury indictment, impliedly found that the State carried the initial burden and that burden was satisfied

---

[4] See, e.g., Hyatte v. Lopez, 174 Ind. App. 149, 155, 366 N.E.2d 676, 680 (1977) (when natural father petitions for habeas relief releasing child from custody of grandparent, burden fell on grandparent to prove custody was in best interest of child).

[5] Lumm v. State, 3 Ind. 293, 294 (1852); cf. Ind. Code § 34-25.5-5-2.

[6] See, e.g., Hobbs v. Lindsey, 240 Ind. 74, 81, 162 N.E.2d 85, 89 (1959) ("Having thus made a prima facie case of excessiveness, the petitioner could rest and the burden then shift to the state to show the necessity or justification for the unusual amount of bail required."); see also Ind. Code § 34-25.5-2-1 (habeas petition must state with particularity the nature of detention's unlawfulness).

[7] See, e.g., Woodford v. Visciotti, 537 U.S. 19, 25 (2002) (burden on petitioner to show state court incorrectly applied Strickland test for ineffective assistance of counsel); Hawk v. Olson, 326 U.S. 271, 279 (1945) (habeas petitioner carries burden in post-conviction collateral attack on judgment); Adams v. U.S. ex rel. McCann, 317 U.S. 269, 281 (1942) (burden on habeas petitioner to show waiver of jury trial resulted in essential unfairness); South Carolina v. Bailey, 289 U.S. 412, 421–22 (1933) (defendant arrested on extradition warrant bears burden in habeas corpus proceeding of showing he was not in lawful custody).

by the indictment.[8]   See Heffren, 27 Ind. at 89 ("The views already expressed seem to us necessarily to result from the nature of the question to be examined, the effect of the indictment, justifying the imprisonment in the first instance, and the demands of fairness in the investigation.").   Regardless, it has remained ensconced in our jurisprudence for the past 150 years.  And under either rationale, the questions going forward are whether that analysis was—or still is—correct, and if still viable, does it also apply in a case like Fry's, where he was *not* charged pursuant to an indictment?[9]

## B.  Treatment by Other States

Our constitutional qualification on the presumptive right to bail is not unique to Indiana. As far back as 1682, the Pennsylvania charter permitted bail for capital crimes except "where the proof is evident, or the presumption great."  Simpson v. Owens, 85 P.3d 478, 485 (Ariz. Ct. App. 2004) (citing Charter of Liberties and Frame of Government of the Province of Pennsylvania in America (May 5, 1682), reprinted in Colonial Origins 271, 281–83).  In 1818, Connecticut's constitution became the first to incorporate such language, providing for a right of bail by

---

[8] Even at the time it was decided, the assigning of the burden to the defendant was a matter of some dispute.  See Heffren, 127 Ind. at 92 (Ray, C.J., dissenting) ("I do not feel prepared to concur in so much of the ruling in this case as requires the petitioner to assume the burden of showing that he is entitled to be admitted to bail.").

Justice Massa's separate opinion notes that the majority members in Heffren were long-standing attorneys in the Indiana Bar and probably deeply involved in the drafting of the 1851 Constitution and therefore may know better than most what the intent behind Article 1, § 17, really was.  But we note that Chief Justice Charles Ray, the lone dissenter, was no slouch himself—he is described in the same text as "an erudite man of letters who rubbed shoulders with the titans of the state's history and closed his lengthy career as a renowned legal scholar," David J. Remondini, "Charles A. Ray," in Justices of the Indiana Supreme Court 76 (Linda C. Gugin & James E. St. Clair eds., 2010).

[9] Fry was charged by information, which means the assessment of probable cause did not first go through the grand jury's protective responsibilities.

sufficient sureties "except for capital offenses, where the proof is evident, or the presumption great." State v. Konigsberg, 164 A.2d 740, 742 (N.J. 1960) (quoting Conn. Const. art. 1, § 14 (1818)). By the late twentieth century, the majority of the State constitutions contained similar provisions. See id. (forty states with such provisions by 1960); see also In re Humphrey, 601 P.2d 103, App. I (Okla. Crim. App. 1979) (forty-one states with similar—or more expansive— provisions by 1979). Our current research shows that thirty-nine states have a qualified right to bail in their constitutions, most using language similar to that found in Article 1, § 17, of the Indiana Constitution.[10] Others make this a statutory determination[11] or permit the denial of bail for certain offenses but only for a short duration.[12]

---

[10] See Ala. Const. Art. I, § 16 (excepting capital crimes when "proof is evident or the presumption great"); Ak. Const. Art. 1, § 11 (excepting capital crimes when "proof is evident or the presumption great"); Ariz. Const. Art. 2, § 22 (excepting capital offenses, sexual assault, sex crimes where victim is less than fifteen years of age, felonies committed when on bail for a separate felony, felonies where offender poses a substantial risk to community, and certain serious felonies committed by illegal aliens, when "proof is evident or the presumption great"); Ark. Const. Art. 2, § 8 (excepting capital offenses when "proof is evident or the presumption great"); Calif. Const. Art. 1, § 12 (excepting capital crimes when "the facts are evident or the presumption great," and violent felonies, sexual assaults, and felonies where offender poses a threat to others when "the facts are evident or the presumption great" and court finds "based on clear and convincing evidence" that there is a "substantial likelihood" that harm would result); Colo. Const. Art. 2, § 19 (excepting capital offenses and felonies placing public in significant peril "when proof is evident or presumption is great"); Conn. Const. Art. 1, § 8 (excepting capital offenses when "proof is evident or the presumption great"); Del. Const. Art. 1, § 12 (excepting capital offenses when "proof is positive or the presumption great"); Fla. Const. Art. 1, § 14 (excepting capital offenses or offenses punishable by life imprisonment when "proof of guilt is evident or the presumption is great"); Idaho Const. Art. I, § 6 (excepting capital offenses when "the proof is evident or the presumption great"); Ill. Const. Art. 1, § 9 (excepting capital offenses, offenses or offenses punishable by life imprisonment, and felonies in which release poses threat to community, when "proof is evident or the presumption great"); Iowa Const. Art. 1, § 12 (excepting capital offenses when "the proof is evident, or the presumption great"); Kan. Const. Bill of Rights, § 9 (excepting capital offenses when "the proof is evident or the presumption great"); Ky. Const. § 16 (excepting capital offenses when "proof is evident or the presumption great"); La. Const. Art. 1, § 18 (excepting capital offenses when "proof is evident and the presumption of guilt is great"); Me. Const. Art. 1, § 10 (excepting capital offenses "when the proof is evident or the presumption great"); Mich. Const. Art. I, § 15 (excepting certain habitual offenders, murder, treason, certain sexual offenses, and felonies committed while on bail for prior felony, when

"proof is evident or the presumption great"); Minn. Const. Art. 1, § 7 (excepting capital offenses when "proof is evident or the presumption great"); Miss. Const. Art. 3, § 29 (excepting capital offenses when "proof is evident or presumption great" or when defendant has prior conviction for capital offense); Mo. Const. Art. 1, § 20 (excepting capital offenses when "proof is evident or the presumption great"); Mont. Const. Art. 2, § 21 (excepting capital offenses when "proof is evident or the presumption great"); Neb. Const. Art. I, § 9 (excepting treason, violent sexual offenses, and murder when "proof is evident or the presumption great"); Nev. Const. Art. 1, § 7 (exception capital offenses or murders punishable by life imprisonment when "proof is evident or the presumption great"); N.J. Const. Art. 1, § 11 (excepting capital offenses when "proof is evident or presumption great"); N.M. Const. Art. 2, § 13 (excepting capital offenses when "proof is evident or the presumption great," and in particular enumerated circumstances); N.D. Const. Art. 1, § 11 (excepting capital offenses when "proof is evident or the presumption great"); Ohio Const. Art. I, § 9 (excepting capital offenses and felonies where defendant poses risk to community when "proof is evident or the presumption great"); Ok. Const. Art. 2, § 8 (excepting capital offenses and other particular enumerated circumstances when "proof of guilt is evident, or the presumption thereof is great"); Or. Const. Art. I, § 14 (excepting murder and treason when "proof is evident, or the presumption strong"); Penn. Const. Art. 1, § 14 (excepting capital offenses when "proof is evident or presumption great"); R.I. Const. Art. 1, § 9 (excepting offenses punishable by life imprisonment and certain habitual offenders when "proof of guilt is evident or the presumption great"); S.C. Const. Art. I, § 15 (excepting capital offenses, offenses punishable by life imprisonment, or certain violent offenses "giving due weight to the evidence and to the nature and circumstances of the event"); S.D. Const. Art. 6, § 8 (excepting capital offenses when "proof is evident or presumption great"); Tenn. Const. Art. 1, § 15 (excepting capital offenses when "proof is evident, or the presumption great"); Tex. Const. Art. 1, § 11 (excepting capital offenses when "proof is evident"); Utah Const. Art. 1, § 8 (excepting capital offenses and felonies committed while on probation or bail for a previous felony when "there is substantial evidence to support the charge"); Vt. Const. Ch. II, § 40 (excepting offenses punishable by death or life imprisonment when "evidence of guilt is great"); Wash. Const. Art. 1, § 20 (excepting capital offenses when "proof is evident, or the presumption great"); Wy. Const. Art. 1, § 14 (excepting capital offenses when "proof is evident or the presumption great").

[11] See Ga. Code Ann. § 17-6-1 (unqualified right to bail only in most misdemeanor cases); Haw. Rev. Stat. § 804-3 (excepting "serious crimes" when there is "serious risk" that defendant will flee, obstruct justice, endanger the community, or engage in illegal activity); N.H. Rev. Stat. § 597:1-c (excepting offenses punishable by life imprisonment "where the proof is evident or the presumption great"); N.C. Gen. Stat. § 15A-533 (trial court has discretion to deny bail to defendant charged with capital offense); Va. Code Ann. § 19.2-120 (bail may be denied when probable cause exists that defendant will not appear for trial or poses risk to community).

[12] See Wis. Const. Art. 1, § 8 (permitting denial of bail for short periods of time for certain offenses; prior to 1982 amendment, provision excepted capital offenses from right to bail when "proof is evident or presumption great")

Some states have placed the burden of proving the exception on the State,[13] whereas others—like Indiana—have used an indictment on a capital offense as a prima facie presumption of guilt that the defendant must rebut.[14] [15] Quite understandably, Fry points us to that first camp and urges that Indiana join them. The State, in turn, points out that Indiana is not alone in its view and that many of these contrary decisions precede our cases on this matter; they did not sway us then, the State claims, so they should not sway us now.

As the State says, those cases to which Fry points us tend to rely on two primary points: the presumption of innocence and the practicality of which party is better positioned to present evidence at this stage of the criminal proceeding. We explore the merits of those points in turn.

First, the cases highlight the link between the presumptive right to bail and the presumption of innocence—something our case law also emphasizes. See Simpson, 85 P.3d at 486 ("Ultimately, though, the criminal jurisprudence of the United States and any discussion of

---

[13] See, e.g., Simpson, 85 P.3d 478; Renton v. State, 577 S.W.2d 594 (Ark. 1979); Yording v. Walker, 683 P.2d 788 (Colo. 1984); State v. Carter, 268 A.2d 677 (Conn. 1970); In re Steigler, 250 A.2d 379 (Del. 1969); State v. Arthur, 390 So.2d 717 (Fla. 1980); Bates v. Hawkins, 478 P.2d 840 (Haw. 1970); People v. Purcell, 778 N.E.2d 695 (Ill. 2002); Ford v. Dilley, 156 N.W. 513 (Iowa 1916); Commonwealth v. Stahl, 35 S.W.2d 563 (Ky. 1931); Serrano v. State, 429 P.2d 831 (Nev. 1967); Konigsberg, 164 A.2d at 740; State v. Roth, 482 P.2d 740 (Or. 1971), modified on other grounds, In re Haynes, 619 P.2d 632 (Or. 1980); Commonwealth v. Heiser, 478 A.2d 1355 (Pa. 1984); Fountaine v. Mullen, 366 A.2d 1138 (R.I. 1976); Ex parte Thrash, 320 S.W.2d 357 (Tx. Ct. Crim. App. 1959).

[14] See, e.g., Livingston v. State, 116 So.2d 396 (Ala. Ct. App. 1959); State v. Green, 275 So.2d 184 (La. 1973); Fischer v. Ball, 129 A.2d 822 (Md. 1957); Huff v. Edwards, 241 So.2d 654 (Miss. 1970); Ex parte Towndrow, 151 P. 761 (N.M. 1915); Shaw v. State, 47 S.W.2d 92 (Tenn. 1932); State v. Crocker, 40 P. 681 (Wyo. 1895).

[15] In some analyses, a third track arose—one in which the indictment on a capital offense was conclusive on the question of whether the proof was evident or the presumption strong. That track of case law has since died out. Compare Konigsberg, 164 A.2d at 743 and Roth, 482 P.2d 740 at 741 with Purcell, 778 N.E.2d at 699. See also Ford, 156 N.W. at 517–18 (explaining the history of this common law rule).

12

bail is founded on a presumption of individual innocence."); cf Bozovichar, 230 Ind. at 361, 103 N.E.2d at 681. Moreover, those cases find—correctly, we think—that in an even weighing between the purpose of bail and the presumption of innocence, the presumption of innocence must trump. "[L]iberty is the norm, and detention prior to trial or without trial is the carefully limited exception." Simpson, 85 P.3d at 486 (quoting Salerno, 481 U.S. at 755). "Refusal of freedom in violation of the mandate of our organic law would constitute punishment before conviction, a notion abhorrent to our democratic system." Konigsberg, 164 A.2d at 743.

The State argues that the presumption of innocence is not the only factor at issue in bail decisions, which is quite correct. As we have said, the determination must primarily consider the likelihood that the accused will be present to stand trial and, in some instances, any potential danger to the community. In fact, as the State correctly continues, guilt or innocence is not a factor at all in the bail decision, which is why appellate courts avoid laying out the evidence in opinions reviewing pre-trial denial of bail. Doing so would risk improperly influencing a later trial and jeopardizing the presumption of innocence. Rather, the presumption against bail in a murder case is—as we said in Phillips—based on a presumptive likelihood that one accused of such a crime is unlikely to appear for trial no matter what the monetary consequences.

Nevertheless, we do not find the State's arguments availing. For one thing, we read Article 1, § 17, to grant a right to bail for all offenses "other than murder or treason," and those two crimes "shall not be bailable, when the proof is evident, or the presumption strong." Ind. Const. art. 1, § 17. We do not see this in any way other than murder and treason—when the proof is evident, or the presumption strong—being exceptions to the presumptive right to bail. We think it only fair that the party seeking to apply that exception—the State—should be the one required to prove it. Cf. Konigsberg, 164 A.2d at 744 ("The burden should rest on the party relying on the exception. That is the logical and natural rule and the one which conforms with the pervasive presumption of innocence attending all criminal charges.").

13

Additionally, contrary to the State's argument that guilt or innocence is not at issue in a bail hearing, those matters are very much at issue in a bail hearing where the defendant is accused of murder. In fact, the "proof" and "presumption" that Article 1, § 17, refers to are the "proof" and "presumption" of *guilt*. What the State is seeking—and what we acknowledge that we have always required—is for a criminal defendant accused of murder (and who is presumed innocent until found guilty beyond a reasonable doubt) to get bail only by carrying the burden of proving that he is probably *not* guilty. This flies in the face of "the principle that the presumption of innocence abides in the accused for all purposes while awaiting trial." Arthur, 390 So.2d at 719.

Second, in considering whether the State or defendant should carry the burden of proof in these matters, these cases tend to hold that "as a matter of convenience, fairness, and practicality, it is preferable that the state have the burden of coming forward when the accused seeks release on bail. Presumably the state is in a better position to present to the court the evidence upon which it intends to rely." Id. at 720; cf. Simpson, 85 P.3d at 487 ("Indeed, apart from the presumption in favor of bail, the State is in a position superior to that of the accused to produce evidence during a hearing because it already will have presented evidence in the process of charging the person."); Purcell, 778 N.E.2d at 700 ("As a practical matter, the State is in a better position to present such evidence during a bail hearing. In most cases, the State will have already presented some evidence against the accused in order to secure an indictment from the grand jury."). And as the Iowa Supreme Court said,

> Let us see at what point the theory of the minority is stopped by logic, a decent regard for the rights of the accused, and the limitations upon the powers of mere human beings. The state avers that the accused is guilty of a charged crime. In all arguments for the claim that the indictment makes prima facie proof the major premise is that the grand jury would not indict if there were not evidence justifying indictment. It follows that the prosecution knows what and where the justifying evidence is. *It certainly does seem more natural that the one who affirms guilt, and that there is evidence which makes the proof of guilt evident or*

14

> *the presumption thereof great, should, in the first instance, be held to point out what that evidence is, rather than that the accused, saying there is and should be no evidence, should go into the wide world in search of that which he says does not and should not exist; and this for the purpose of cross-examining and overthrowing it after he has gathered it.*

Ford, 156 N.W. at 524 (emphasis added); see also Konigsberg, 164 A.2d at 744 (quoting Ford, 156 N.W. at 524).

The State downplays this concern, saying that defendants have carried this burden in Indiana since 1866 and the process has not been unworkable. Moreover, the State says, the more liberal discovery rules for criminal cases—and less reliance on the secretive grand jury process—mean that the process is even less problematic. By way of example, the State says that "[a]s a general rule, most defendants now receive a witness list with the charging information and discovery of the evidence against them very quickly after charging," and it is therefore unpersuasive to argue that the defendant has not heard the State's evidence. (Appellee's Br. at 15, 15 n.7.)

Again, we find the State's arguments unavailing. For one thing, "because that's the way we've always done it" is a poor excuse—the merits of stare decisis notwithstanding—for continuing to do something *wrong*. But for another, the fact that some criminal defendants might benefit from a witness list or charging information, or not be indicted through a secret grand jury proceeding, does not mean that *all* criminal defendants will be so lucky. At the same time, it is axiomatic that in *every* case the State will have access to the evidence it uses to support its charge. And as Fry's case in particular shows, the State suffers no undue burden in being required to go first at this stage—here it still achieved the result desired, as Fry was denied bail.

Also, one of the primary benefits of bail—to the defendant—is that it "permits the unhampered preparation of a defense." Bozovichar, 230 Ind. at 361, 103 N.E.2d at 681; cf. Purcell, 778 N.E.2d at 700 ("The accused, on the other hand, is often in a very poor position to

gather and present evidence at a bail hearing, as he is incarcerated and facing charges in a criminal proceeding only recently initiated against him.").

By placing the burden on the defendant accused of murder or treason in a bail proceeding, we are in effect requiring him, while hampered by incarceration, to disprove the State's case *pre*-trial in order to earn the right to be unhampered by incarceration as he prepares to disprove the State's case *at* trial. There is no valid justification for such a backwards process.[16]

Moreover, those cases also strongly call into question the reliance upon the grand jury indictment as prima facie evidence—a reliance that is a critical foundation to our jurisprudence on this issue. Grand jury proceedings are secret, with the grand jurors, witnesses, and anyone entering the room forbidden from disclosing the nature or substance of testimony, or decisions or results made during the proceeding. Ind. Code § 35-34-2-4(e), -2(i); cf. Konigsberg, 164 A.2d 743. "The accused is not present nor can he be represented by counsel, and it is probably fair to say that in some instances he is not even aware that allegations against him are being considered." Id.; cf. Ind. Code §§ 35-34-2-5.5 (target of grand jury may be subpoenaed, in which case he may be represented by counsel, but counsel may not address grand jurors or prosecutor, object, argue, question any person, or participate in any way), -9 (target shall be given right to testify provided he waives immunity, but prosecutor need not notify target of that

---

[16] We acknowledge that in Phillips we said that the seriousness of a murder charge raises the likelihood that no amount of money could persuade a criminal defendant to return to stand trial. See Phillips, 550 N.E.2d at 1295. But the same could be said of defendants accused of committing many heinous crimes—for example, a series of child molestations, or rapes, or even large-scale financial crimes. Put simply, there is no calculus by which one can weigh the fear of conviction and punishment against the likelihood of flight and establish a bright-line rule that applies to some crimes (and some criminals), but not others. Even if this were possible, we disagree that this presumption, when weighed against the other considerations we have discussed above but unstated in Phillips, justifies "the allocation of the burden showing entitlement to bail on the accused." Id.

16

right if it might result in flight of target). "The prosecutor ordinarily selects the witnesses to testify; usually he gives the only legal advice, the court being rarely called upon during deliberations; and he generally directs the entire proceeding to a considerable extent." Konigsberg, 164 A.2d 743–44; cf. Ind. Code § 35-34-2-4(k) ("The court and the prosecuting attorney shall be the legal advisors of the grand jury, and the grand jury may not seek or receive legal advice from any other source.").

Exacerbating the matter, once an indictment is endorsed as a true bill we will not permit analysis of the evidence underlying the finding. We therefore have no way of knowing, from just the face of the indictment, whether it reflects merely a finding of probable cause that a crime was committed and the accused committed it or if there is actually the stronger level of proof so as to justify the denial of bail under Article 1, § 17.[17] How then can we expect a defendant to effectively challenge the prima facie presumption if he has no way of knowing how it was reached? And if, as the State suggests, the grand jury proceeding is being used less and less frequently, we think that is even less of a reason why our jurisprudence should be based upon such a shaky foundation.[18] In any event, "[t]o say that a formal accusation of murder under such circumstances sufficiently establishes, even prima facie, that the proof of a capital offense is

_____

[17] And that evidence may be founded on hearsay, personal knowledge of the grand juror, or it might have no evidentiary foundation at all—it might even be the product of an illegal search or seizure. While there are valid reasons for these lower hurdles when the question is only whether to formally accuse an individual of criminal conduct, those reasons seem pale when the question is whether to strip the defendant of his personal liberty before he is convicted. See King v. State, 236 Ind. 268, 277, 139 N.E.2d 547, 552 (Ind. 1957) (because of presumption of innocence, it is proper to instruct the jury "that no inference of guilt is to be drawn from the fact that a grand jury has returned an indictment against the defendant").

[18] For that matter, the State makes no argument as to why the alternative method of filing charges—the filing of an information—should carry the same weight. That is to say, Fry was not charged by a grand jury indictment, so why should he be faced with the rebuttable presumption that the proof in his case is evident, or the presumption of his guilt strong?

evident or the presumption great to justify the denial of bail is to . . . fail in the discharge of our judicial duty." Konigsberg, 164 A.2d at 744.

We recognize that stare decisis "is a maxim of judicial restraint supported by compelling policy reasons of predictability that we should be 'reluctant to disturb long-standing precedent,' and 'a rule which has been deliberately declared should not be disturbed by the same court absent urgent reasons and a clear manifestation of error.'" Snyder v. King, 958 N.E.2d 764, 776 (Ind. 2011) (quoting Marsillett v. State, 495 N.E.2d 699, 704–05 (Ind. 1986)) (internal citations omitted). And it is not without great consideration and hesitation that we undertake to do so today—particularly when we face a rule of law going back to the Civil War era. Nevertheless, as our colleagues on the Florida Supreme Court said in examining this same issue in 1980, "We can no longer ascribe to this procedure." Arthur, 390 So.2d at 719.

Accordingly, today we hold that when a criminal defendant is charged with murder or treason, whether by indictment or information, the burden lies with the State to show that the "proof is evident, or the presumption strong," if it seeks to deny bail to that defendant.[19] More than for the purely practical reasons provided above, we find the contrary procedure used in the past to be incompatible with the fundamental guarantee presuming an accused's innocence until proven guilty beyond a reasonable doubt.[20] Because Indiana Code § 35-33-8-2(b) follows that

---

[19] Justice Massa's dissent presents an historical analysis of Article 1, § 17 to support continuing the approach that "only those defendants who could show they were likely innocent—who could show the proof of guilt is not evident, nor the presumption strong—should be let to bail," and he concludes by noting that "[w]hile my colleagues may disagree with that policy, it is what the framers intended and what the Constitution says, and we are bound to uphold it until such time as the citizens of Indiana see fit to amend it." We note again that the text of Article 1, § 17 of the 1851 Indiana Constitution says nothing whatsoever about who bears this particular burden and thus there is nothing for the citizens of Indiana to amend. The determination of burden placement is a product purely of this Court's cases.

[20] Justice Rucker's alternative interpretation of section 35-33-8-2(b) follows our well-respected principle of constitutional avoidance, but it unfortunately runs afoul of the very constitutional provision at issue.

past case law, it is similarly incompatible on its face and we must therefore affirm the trial court's finding that it is unconstitutional.[21]

### C. When is the "Proof Evident" or the "Presumption Strong?"

In the past, we have required the accused to "introduce the evidence of witnesses indicated by the indictment, and he must also introduce such witnesses as the State indicates that it does rely on, or claims it relies on, but it cannot foreclose the inquiry by simply declaring as to any witness that it does not rely on his testimony." Hedges, 177 Ind. at 592. Because that is no longer the case, we feel it necessary to articulate what is contemplated by the burden we have now assigned to the State.

---

Article 1, § 17 states that "Murder or treason *shall not be bailable*, when the proof is evident, or the presumption strong." Ind. Const. art. 1, § 17 (emphasis added). Once the State showed the proof was evident, or the presumption strong, then our Constitution compels the process to stop. We cannot then follow his second step and allow the statutory provision to require the defendant to show that he should be admitted to bail. That defendant could not be constitutionally admitted to bail under any circumstances.

[21] The dissent raises concerns of "collateral consequences" resulting from this determination. But aside from a change in procedure we do not see this opinion's ramifications stretching far. Today we strike down a single subsection of the bail statutes having no interplay with the rest of the thirty-seven statutory provisions dealing with bail in this state. See Ind. Code 35-33-8, -8.5, -9. Any burden that might fall on the General Assembly to remedy this subsection, should it wish to, is as simple as incorporating the holding of this opinion into a new subsection (b).

Also, in the 2011 fiscal year for Indiana courts there were 244,733 criminal matters filed across the state with bail implications, encompassing everything from murder to misdemeanor. 2012 Indiana Judicial Service Report, Vol. 1: Judicial Year in Review 94 (2012). Of those, only 193 were murder cases—well below .01% of the total (and we could find none for treason). Id. While those particular numbers may ebb and flow from year to year, see id., one thing remains clear: without diminishing the severity or seriousness of those murder cases, the ultimate number of cases impacted by this opinion is small and the burden placed on the State low. And at least in one trial court, the one here, the State has shown that it can shoulder this burden quite well.

19

As a starting point, it would be improper to simply relabel this burden as one of our more traditional evidentiary standards like probable cause, preponderance, clear and convincing, or beyond a reasonable doubt. "The language of each provision of the Constitution must be treated with particular deference, as though every word had been hammered into place." Embry v. O'Bannon, 798 N.E.2d 157, 160 (Ind. 2003); see also Simpson, 85 P.3d at 487–88 ("The history of the phrase alone suggests that it is unique and that it establishes its own standard since there is no comparison for recourse. To state otherwise would be to put a 21st century gloss on or give a modern substitute definition to an historic legal phrase.").

Thus, the standard is that the proof must be evident, or the presumption must be strong. We can, however, endeavor to provide some guidance by placing this standard somewhere on the proof spectrum, which is bounded generally at the low end by "reasonable suspicion" and at the high end by "beyond a reasonable doubt." Whether it parallels one of our other traditional standards, or is something else entirely, is the matter which we now endeavor to resolve.

Clearly this standard requires something more than "probable cause," or otherwise the exception of Article 1, § 17, would have no meaning. Probable cause is the minimum standard by which an arrest of an individual may be made—there is probable cause that a crime was committed and the defendant is the one who committed it. If this were to be the same standard by which a person arrested for murder is denied the right of bail, Article 1, § 17, would simply say "murder or treason are not bailable." For this same reason, the State may not simply rest upon the indictment by a grand jury, or a prosecutor's charging information. There must be something more.

Nor can this standard be as high as "beyond a reasonable doubt." Despite the importance of the presumption of innocence, we think it apparent that this would present an insurmountable burden on the State because at this stage its evidence would not necessarily be fully coalesced or verified. Setting the bar this high, this early, would effectively require the State to wait to arrest a defendant until their entire case-in-chief was assembled and prepared. Additionally, providing

20

the defendant the full protection of the "beyond a reasonable doubt" standard would necessarily require the evidentiary rules and Due Process requirements attached to a full trial. If that were the standard, we might as well hold the trial right then and there.

The answer, then, must lie somewhere in the middle. And while we note that in Indiana the primary consideration for a trial court in setting monetary bail[22] is to set an amount no higher "than that amount reasonably required to assure the defendant's appearance in court." Ind. Code § 35-33-8-4(b), under certain circumstances some of the middle burdens of proof already apply in our bail statutes.

For example, a trial court may set bail in a manner calculated "to assure the physical safety of another person or the community," but only if "the court finds by clear and convincing evidence that the defendant poses a risk to the physical safety of another person or the community." Id.; see also Ind. Code § 35-33-8-3.2(a). Or a trial court may release a defendant on his own personal recognizance, unless the state shows evidence of a flight risk or danger to the public and "the court finds by a preponderance of the evidence that the risk exists." Id. at –3.2(a)(7).

So it is clear that in the bail arena, trial courts, defense counsel, and prosecutors are familiar with applying at least those two burdens. But to determine whether either of those—or something else—is appropriate in this particular context, we start by looking again to our sister

---

[22] To attain greater success at incentivizing appearance at trial, enhancing public safety, reducing costs of pre-trial custodial detention, and achieving greater economic equity and fairness in the availability of release from pre-trial detention, there is growing interest and exploration of pre-trial release programs based on evidence-based practices as an alternative to monetary-based bail. *See, e.g.*, Conference of State Court Administrators, *2012-2013 Policy Paper: Evidence-Based Pretrial Release* (2012), *available at* http://cosca.ncsc.dni.us/WhitePapers/Evidence%20Based%20Pre-Trial%20Release%20-Final.pdf. Our opinion today should not be read to limit the availability of such practices in Indiana.

states that have addressed this issue. Like Goldilocks in the home of the three bears, we search for a formulation that is not too low, and not too high, but instead is just right.

The New Jersey Supreme Court said that "bail should be denied when the circumstances disclosed indicate a fair likelihood that the defendant is in danger of a jury verdict of first degree murder." Konigsberg, 164 A.2d at 745. The Oregon Supreme Court followed Konigsberg, holding that "[b]ail should be denied when the circumstances disclosed indicate 'a fair likelihood' that the defendant is in danger of being convicted of murder or treason," Roth, 482 P.2d at 743, but this formulation was later modified by the same court in In re Haynes, 619 P.2d 632 (Or. 1980).

In Haynes, the Oregon Supreme Court rejected the "fair likelihood" test, saying that formulation "illustrates the risk of the common temptation to explain one set of adjectives by a different one." Id. at 636. In its view, "strong" and "evident" could be said "to demand more than 'a fair likelihood.'" Id. (noting that "fair likelihood" language was considered for inclusion in revised bail statutes by Oregon's legislature, but rejected as inconsistent with constitutional provision). "The likelihood of guilt must be more than 'fair,' it must be 'strong,' before release can be denied." Id. More than that, it must "be guilt specifically of murder, not merely of some degree of culpable homicide." Id. The Oregon Supreme Court specifically rejected the high standard of "beyond a reasonable doubt," but said that the evidence must be at least "clear and convincing." Id.[23]

Like the Haynes court, we are skeptical of the "fair likelihood" test as being too low. The Oregon constitution is identical to our constitutional language in that the proof must be "evident"

---

[23] This burden, as we discuss in greater detail below, is too high.

or the presumption "strong," and we concur with the Oregon Supreme Court that these terms have a firmer tone than simply "fair." Also, "fair likelihood" sounds very close to "fair probability," which is a standard Indiana courts assign to the burden which must be shown before a warrant can be issued—in other words, it equates to probable cause. See, e.g., Kirk v. State, 974 N.E.2d 1059, 1072 (Ind. Ct. App. 2012) ("In deciding whether to issue a search warrant, the issuing magistrate's task is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit, there is a fair probability that evidence of a crime will be found in a particular place."), trans. denied. And whatever the standard, we know it must be greater than probable cause.

The Rhode Island Supreme Court settled on a slightly different test, though also rejecting standards as low as probable cause and as high as beyond a reasonable doubt. Fountaine v. Mullen, 366 A.2d 1138, 1141–42 (R.I. 1976). After examining a number of the tests used by other courts, it described the burden of proof as "whether the facts adduced by the state, viewed in the light most favorable to the state (i.e. notwithstanding contradiction of them by defense proof), are legally sufficient to sustain a verdict of guilty." Id. at 1142.

The Florida Supreme Court in Arthur used similar language when it said that "[t]he state's burden, in order to foreclose bail as a matter of right, is to present some further evidence [in addition to the indictment or information] which, viewed in the light most favorable to the state, would be legally sufficient to sustain a jury verdict of guilty." Arthur, 390 So.2d at 720 (citing Fountaine, 366 A.2d at 1138).[24]

---

[24] This does not, however, appear to be the standard followed in Florida courts. See Kirkland v. Fortune, 661 So.2d 395, 397 (Fla. 1995). Instead an earlier line of case law, requiring a standard *higher* than "beyond a reasonable doubt" is followed almost universally by courts of that state. Id. (citing Russell v. State, 71 So. 27 (Fla. 1916)). If the State's evidence, "although not insufficient to convict for a capital or

We think the Rhode Island test—and that used by the Florida Supreme Court in Arthur—is also too low.  They are, in effect, asking the trial court to conduct a pre-trial sufficiency of the evidence hearing.  Cf. Bailey v. State, 979 N.E.2d 133 (Ind. 2012) (outlining test for challenge to sufficiency of evidence underlying conviction).  And we are unwilling to deny a defendant's opportunity for pre-trial liberty on the basis of proof so presumptively favorable to the State because, unlike a post-trial defendant raising a traditional sufficiency challenge, the defendant in a pre-trial bail hearing is still presumed innocent.

Finally, we look to the well-reasoned opinion from the Arizona Court of Appeals in Simpson.  That court, just as we have done, noted that the case law broke down into three main categories:  those requiring some variation of probable cause, including "fair likelihood," those requiring some variation of clear and convincing, or clear and strong, and those requiring some variation of beyond a reasonable doubt.  Simpson, 85 P.3d at 488.  For reasons similar to ours, it rejected the formulations in the first and third categories.  Id. at 488–89.  Like us, it believed the answer lay between those two poles.

It rejected a direct correlation to a "clear and convincing" standard because that standard was expressly used in statutes permitting the denial of bail in other circumstances.  Id. at 491.  Instead, it looked more favorably on variations of language used in Texas and Utah, requiring a "substantial showing" or "substantial evidence" from the State.  Id. at 491 (citing Ex parte Espinoza, 90 S.W.3d 906, 908 (Tex. App. 2002) ("substantial showing," but "far less" than beyond a reasonable doubt) and State v. Kastanis, 848 P.2d 673, 676 (Utah 1993) ("substantial

---

life offense," is in some respect impeached or rendered doubtful, "the proof is not stronger than beyond a reasonable doubt and, accordingly, the accused is entitled to pretrial bail as a matter of right for such offense." Id. (quoting State v. Perry, 605 So.2d 94, 96–97 (Fla. Dist. Ct. App. 1992)).  For all the reasons we reject the standard of beyond a reasonable doubt, we must also reject Florida's view applying an even higher burden.

evidence" satisfied if evidence presented showed reasonable basis for jury finding guilty verdict)). Ultimately, the court concluded

> [T]hat the phrase "proof is evident, or presumption great" provides its own standard: The State's burden is met if all of the evidence, fully considered by the court, makes it plain and clear to the understanding, and satisfactory and apparent to the well-guarded, dispassionate judgment of the court that the accused committed one of the offenses enumerated in A.R.S. § 13-3961(A).[25] In that case, bail must be denied. The proof must be substantial, but it need not rise to proof beyond a reasonable doubt.

Id. at 491.

The Arizona court's articulation of its standard is helpful in some ways, but still not something we may easily adopt for Indiana. To begin, though their constitutional language varies slightly—requiring the presumption to be "great" rather than "strong"—that distinction is of no great concern. The two words are synonyms. But at the same time, we believe Arizona's burden is too high. Specifically, we disagree with the notion that the standard presented by our constitutional language should be *higher* than clear and convincing—or even as high as clear and convincing at all.

In a murder or treason case in Indiana, the bail process is essentially three-fold. First, the trial court must determine whether the defendant may be let to bail at all. Pursuant to our conclusion in Part I.B. of this opinion, that process is driven by the State's presentation of evidence tending to show that the proof of the defendant's guilt is evident, or the presumption of

---

[25] Arizona Revised Statute § 13-3961(A), like Indiana Code § 35-33-8-2(a), codifies that state's constitutional provision permitting the denial of bail for certain offenses "if the proof is evident or the presumption great."

that guilt strong. If the State fails to meet this burden, the trial court must then determine the conditions—if any—of pre-trial release that are necessary to guarantee the defendant's presence at trial or prevent harm to the community.

As we have said, in this second step a trial court may release the defendant on his own recognizance with or without conditions or requirements, and with no financial obligation whatsoever, if it wishes. However, the State may step in and show by only a preponderance of the evidence that the defendant poses either a flight risk or a threat to the physical safety of the community in order to impose monetary bail or other pre-trial release conditions reasonably aimed at ensuring the defendant's appearance in court—but those conditions may be aimed at protecting the community only upon a showing of clear and convincing evidence that the defendant poses a danger to others.

We think it proper that the standards for the first and second steps are parallel. That is, the State must prove its case by a preponderance of the evidence. At the first step, it would essentially mean that the State must show that the defendant "more likely than not" committed the crime of murder (or treason). Such a showing, at such an early stage of the process, seems sufficient to justify the denial of bail given the severity of the proposed offense and the attendant consequences. After all, at that point the trial court—while not pre-judging the ultimate guilt or innocence of the defendant—can reasonably say "the defendant most likely did it."[26]

The inverse is also true. If the State cannot carry this burden at this stage, then the resulting finding is that—at that point—the evidence shows that the defendant more likely than

---

[26] At the second step, it means the State must show that the defendant is "more likely than not" to be a flight risk. In that instance it also makes sense that the trial court does not simply release the defendant on his own recognizance.

not did *not* commit the crime. Again, it does not foreclose the possibility that the State will produce more and greater evidence in the course of its case in chief at trial and prove the defendant's guilt beyond a reasonable doubt. But at that early stage it certainly seems wrong to deny even the opportunity to bail when "the defendant most likely didn't do it."[27]

Moreover, in addition to placing the standard on equal footing as one with which trial judges and practitioners are already familiar, our result aligns well with the language of our Article 1, § 17: that the proof must be evident[28], or the presumption strong.[29] Likewise, we think it makes sense that there be a higher standard at the third step—that is, to impose additional conditions on a defendant's bail based on an alleged risk to the community. This is a function of bail not linked to its traditional purpose and it is thus reasonable for the General Assembly to require the greater showing of clear and convincing evidence.

As we have already made clear, this burden cannot be satisfied with the charging indictment or information alone. Rather, the State must also present competent evidence either upon which those charging documents relied or upon which the State intends to rely at trial. Additionally, the evidence cannot simply be statements by the prosecutor as to what the proof will—or might—be at trial. "A prosecutor's assertions about evidence that he 'feels' he 'may be

---

[27] Again, at the second step this is equally logical. In this inverse, the State is asking a trial court to not release a defendant on his own recognizance even though the defendant is more likely to *not* be a flight risk.

[28] See, e.g., Webster's II New College Dictionary 389 (1995) ("evident" defined as "[e]asily seen or understood"); Webster's New World Thesaurus 256 (1985) (synonyms for "evident" including "logical" and "reasonable").

[29] "A presumption is valid in a criminal case when the fact presumed is more likely than not to flow from the fact on which the presumption is based." Kindred v. State, 524 N.E.2d 279, 302 (Ind. 1988). Moreover, here the particular presumption the State is seeking to demonstrate must be strong enough to adequately rebut another presumption—that of the defendant's innocence.

27

able to introduce' are not 'proof.'" Haynes, 619 P.2d at 642. "The magistrate must be shown information at the hearing from which he can make his own independent determination whether there is admissible evidence against an accused that adds up to strong or evident proof of guilt." Id. Furthermore, we also agree with the Oregon Supreme Court that the evidence presented by the State must show culpability of the actual capital crime for which bail may be wholly denied—i.e. murder or treason—and not simply implicate a lesser-included offense such as voluntary or involuntary manslaughter.[30]

Finally, we caution that our opinion today should not be construed to modify—either to enhance or diminish—the due process protections we have always required at bail hearings. See Phillips, 550 N.E.2d at 1295. Neither does it impact the methodology a trial court would use to later set bail if the State fails to meet this burden, nor does it change the standard of appellate review in a case like this, where bail was denied outright, or in a case in which the defendant later appeals the monetary bail amount or pre-trial conditions set by the trial court. Nor should it color the factfinder's ultimate conclusion on the guilt or innocence of the defendant after a full and fair trial on the merits.

## II.   Denial of Bail for Fry

These holdings do not end the matter, though, because in Fry's case the trial court directed the State to proceed first and present its evidence showing that the proof was evident or

---

[30] This is another concern with using a grand jury indictment as prima facie satisfaction of this burden, as an indictment for murder necessarily includes indictments on the lesser-included offenses. See Lumm, 3 Ind. at 295 ("and further, upon an indictment for murder in the first degree, the accused may be convicted of murder in the first, on the second, degree, or of manslaughter"). However, only murder is constitutionally excepted from the presumptive right to bail.

the presumption strong. Seeking review of the ultimate outcome in that proceeding as well, Fry challenges the trial court's subsequent order denying him bail.

In these sorts of cases it has always been our practice to avoid specific commentary on this issue, to avoid influencing the outcome of the trial with an elaborate presentation and public assessment of the evidence for and against the defendant. See Heffren, 27 Ind. at 89 ("In alluding to the evidence it is desirable, though difficult, and perhaps impossible, to exhibit the reasons which conduct us to a conclusion, without pre-occupying ground which, upon the final trial, must necessarily be traversed by the jury."); see also Bozovichar, 230 Ind. at 366, 103 N.E.2d at 683 ("We think no good purpose would be served by reciting the evidence. Inasmuch as the appellant is yet to be tried on the indictment it seems more proper not to do so."); Hedges, 177 Ind. at 593, 98 N.E. at 418 ("We do not set out the evidence in this case upon which the court acted, for the reason that it covers very much the ground which must be covered upon a trial of the offense . . . ."); Richards, 102 Ind. at 261–62 ("No good purpose could be subserved by our setting out, in this opinion, even the substance of the evidence, and it would seem to be improper for us to comment thereon, as the case is yet to be tried."). And the outcome of this issue should in no way bear on a trier of fact's later determination of whether Fry committed the offense of murder beyond a reasonable doubt.

Nevertheless, "it is the duty of the supreme court to weigh the evidence and determine its sufficiency to require that the petitioner should be admitted to bail." Schmidt, 137 Ind. at 94. And though today we have clarified the evidentiary standard for the proof to be evident, or the presumption strong, our responsibility in this appellate review is "to weigh the evidence and pass upon it as a trial court." McAdams, 196 Ind. at 187, 147 N.E. at 765. Given this, and in light of the exceptional lengths gone to by Judge Maughmer, the prosecutor, and Fry's counsel to

develop a full evidentiary record on this question, we see no need to remand for an additional hearing in this case.[31]

We have exercised our appellate duty here, reviewing the evidence presented by the parties before the trial court and considering their arguments and presented authorities. This review leads us to conclude that the trial court did not abuse his discretion in denying Fry bail.[32]

---

[31] Additionally, those involved took great pains to avoid poisoning the ultimate outcome of the case during this process. We recognize that they were blazing a new trail, but the record reflects that they all sought to do so in a way that was fair, thorough, and cooperative. For that we commend Judge Rick Maughmer, the Cass County Prosecutor Mr. Kevin Enyeart, and Loren Fry's attorney, Mr. Jim Brugh.

[32] Both dissenting opinions agree on this result, but owing to this say that we should not have taken up the question of constitutionality at all. Rather, Loren Fry should have been denied bail regardless of the approach taken, and the dissent would leave the question of whether section 35-33-8-2(b) violates the constitutional presumption of innocence until we were faced with "a proper case."

Most likely a "proper case" would be one in which our review of the evidence put forth by the defendant—because that would still be the law—would be a closer call, and the battle below had been won by the State. We agree that we could wait for such an occurrence, and under certain jurisprudential theories that would be advisable. But the procedure as currently in place is wrong. It is offensive to the constitutional guarantees afforded to criminal defendants in Indiana. So waiting for a "proper case" would be waiting for a criminal defendant to be constitutionally wronged enough that we are finally willing to step in and remedy that wrong for all such defendants. And in the meantime, that presumptively innocent defendant would sit in pretrial detention, denied bail and limited in his ability to formulate his defense—all the while waiting for us to reach the same conclusion that we do today.

In any event, Loren Fry's case is here and we need not wait. By a 4-0 vote this Court accepted his direct appeal—which, by rule, was only proper because the constitutionality of a statute was called into question—and so it is wholly appropriate to address that issue regardless of any ultimate impact it has on Fry's bail determination.

30

## Conclusion

We hold today that when a defendant charged with murder or treason seeks bail, the burden is on the State, if it seeks to deny bail, to show—by a preponderance of the evidence—that the proof is evident or the presumption strong. This change notwithstanding, we also affirm the trial court's denial of Fry's bail in this case.

Dickson, C.J., concurs with separate opinion which Rush, J., joins.
Rush, J., concurs.
Massa, J., concurs in result and dissents with separate opinion.
Rucker, J., dissents with separate opinion in which Massa, J., concurs.

**Dickson, Chief Justice, concurring.**

I applaud the carefully researched and thoughtful separate opinions of Justices Rucker and Massa. But I find determinative the actual language of the Right to Bail Clause of the Indiana Constitution.

> Offenses, other than murder or treason, shall be bailable by sufficient sureties. Murder or treason shall not be bailable, when the proof is evident or the presumption strong.

Ind. Const. art. 1, § 17. Put another way, this provision declares a general rule that criminal offenses are bailable, with one exception, for murder and treason, that arises upon satisfaction of a prerequisite—where "the proof is evident or the presumption strong." When such prerequisite is satisfied, then the exception to the right to bail applies, and murder or treason "shall not be bailable."

As expressed in the language of our Right to Bail Clause, it is the presence of one of the prerequisite factors (that "the proof is evident or the presumption strong") not its absence, that must be shown to trigger the exception precluding bail for murder and treason. The Constitution's text thus places upon the State, as the party seeking to prevent a murder or treason defendant from seeking bail, the burden of showing the existence of one of the prerequisite factors. Ensuing contrary opinions of this Court, or statutory attempts to codify such opinions, are contrary to the text of the Constitution and cannot prevail. For this reason, I concur with the majority.

The separate views of one or a few individual delegates do not necessarily establish the intentions of the majority of the delegates to the Constitutional Convention, and certainly not the understanding of the voters who ratified the Constitution. To ascertain the intentions of the majority of framers and ratifiers, the text of the Constitution remains the essential resource. When, as here, the text directly resolves the question, any contrary views of one or some of the delegates or contemporaneous jurists are irrelevant.

The Court today announces a measured approach that fully implements the requirements of the Right to Bail Clause of our Constitution while at the same time honoring and adhering to the presumption of innocence. To obtain pre-trial detention without bail of a person charged with murder or treason, the State need only show that the accused more likely than not committed the charged crime. Only if the State cannot make this minimal showing may the trial court establish monetary bail or other conditions of pre-trial release. I am convinced that the standard established today represents a proper understanding and application of the Indiana Constitution's Right to Bail Clause, and I thus concur.

Rush, J., joins.

**Massa, Justice, concurring in result and dissenting.**

I agree with the majority insofar as it affirms the trial court's decision to deny Fry bail, but I dissent from the majority holding that Ind. Code § 35-33-8-2(b) is unconstitutional. While I agree with Justice Rucker and join in his dissent, I write separately to reaffirm and support this Court's past precedent and its long-standing adherence to an originalist interpretation of our state constitution.

We often cite the intent of the framers of our founding documents as a guiding principle of our jurisprudence, see, e.g., Snyder v. King, 958 N.E.2d 764, 772 (Ind. 2011), Spickermon v. Goddard, 182 Ind. 523, 525, 107 N.E. 2, 3 (1914), State v. Denny, 118 Ind. 449, 458, 21 N.E. 274, 276 (1889), but rarely are we afforded the benefit of knowing exactly what the framers of our constitution were thinking when they penned the words to a specific provision. Indiana's 1816 Constitution provided: "That all persons shall be bailable by sufficient sureties, unless for capital offenses, when the proof is evident, or the presumption great." Ind. Const. of 1816, art. 1, § 14. When it came time to amend our Constitution 35 years later, the convention delegates discussed this provision extensively. See 2 Report of the Debates and Proceedings of the Convention for the Revision of the Constitution of the State of Indiana 1379 (1850). One member, Mr. Thornton of Floyd County, sought to amend it substantially. Id. He opposed the death penalty, disliked the implication connoted by the word "capital," and hoped that one day the new General Assembly would abolish the death penalty entirely. Id. at 1379–80. Until that day, he believed, "bail should always be available," but the "magnitude of the offense and circumstances of the crime" and of the offender should dictate the amount of bail set. Id.

Before a vote was taken, Mr. Gibson of Clark County offered an amendment to "perfect" the original language of the 1816 Constitution. Id. at 1381. He proposed the words "capital offenses" be stricken and replaced with the words "murder and treason," which change was adopted by consent. Id. Mr. Gibson then proceeded to explain why the change proposed by Mr. Thornton was unacceptable. He called it "one of the most startling innovations that had ever been introduced in our system . . . that a man who was willing to pay a sufficient price might commit murder with impunity." Id. All that man would have to do is "pay the price at which the bail was fixed and then he might

quietly put up his goods and leave the country." Id. Mr. Thornton defended his amendment, arguing all offenses should be bailable in order to "advance the cause of personal liberty." He then asked for a vote, and his amendment was defeated ninety votes to nine. One of the nays came from delegate Horace Biddle, id. at 1382, about whom we will hear more later. Douglas B. Morton, "Horace P. Biddle," in Justices of the Indiana Supreme Court 101–04 (Linda C. Gugin & James E. St. Clair eds., 2010). The murder bail provision, in its finally adopted form, read as follows: "Offenses, other than murder or treason, shall be bailable by sufficient sureties. Murder or treason shall not be bailable, when the proof is evident, or the presumption strong." Ind. Const. art. 1, § 17 (1851). And so it still reads today.

The majority looks back to the first case in Indiana history to discuss the bail provision and determines it was wrongly decided. Ex parte Heffren, 27 Ind. 87 (1866) was handed down just fifteen years after the adoption of Indiana's 1851 Constitution. Its author, Justice James Somerville Frazer, had been admitted to the Indiana bar for twenty-one years when he drafted Heffren and served in Indiana's House of Representatives both before and after the adoption of the 1851 Constitution. Donald B. Kite, Sr., "James S. Frazer," in Justices, supra, at 69. Of the two justices that joined his opinion in full, Justice Jehu Tindle Elliott had served on the bench for twenty-two years at various levels and had spent three years in Indiana's Senate. Greta Morris Scodro, "Jehu T. Elliott," in Justices, supra, at 74–75. Justice Robert Crockett Gregory spent three years in the Senate and practiced law all his life. Bradford W. Sample, "Robert C. Gregory," in Justices, supra, at 82. These men knew the framers of Indiana's constitution and were intimately familiar with the discussions and debates of 1850–51, and they decided that the murder bail provision places the burden on the defendant to show the proof of guilt is not evident nor the presumption of guilt strong. Heffren, 27 Ind. at 88–89.

While several cases discussed the standard trial courts should apply to determine whether a defendant should be let to bail in a murder case, see Ex parte Moore, 30 Ind. 197 (1868); Ex parte Halpine, 30 Ind. 254 (1868); Ex parte Colter, 35 Ind. 109 (1871), none addressed Heffren's holding that a defendant had the burden to produce evidence to show the proof was not evident nor the presumption strong until Ex parte Jones, 55 Ind. 176 (1876). Jones held that the defendants, who were

2

charged with murder and seeking to be admitted to bail, "assumed the burden of showing, by the evidence, that the proof of their guilt was not evident, and that the presumption of their guilt was not strong." Id. at 180. Justice Howk drafted the opinion reaffirming Heffren. Id. at 176. Justice Horace P. Biddle, a lawyer, poet, and delegate to Indiana's 1850 Constitutional Convention, joined Howk's opinion and was one of the ninety votes to reject Mr. Thornton's proposal to allow bail in all cases at an amount commensurate with the magnitude of the crime and circumstances of the defendant. Justice Biddle's vote with the majority in Jones to reaffirm Heffren further evinces the framers' intent that in cases of murder or treason, the burden of proof of entitlement to bail, should rest upon the defendant.

The language of the Constitution, the convention debates, and the judicial and legislative history all demonstrate the purpose behind the murder bail provision. The framers specifically excluded those charged with murder or treason from the possibility of bail in most cases because of the seriousness of those crimes. They feared that if a defendant were admitted to bail, he may flee rather than face a judge or jury. Thus, only those defendants who could show they were likely innocent—who could show the proof of guilt was not evident nor the presumption strong—should be let to bail.[1] While my colleagues may disagree with that policy, it is what the framers intended and

---

[1] Both the majority opinion and the Chief Justice's concurrence are quite reasonably grounded in a desire to honor and adhere to the presumption of innocence enshrined in our criminal justice system. I agree that "the principle that there is a presumption of innocence in favor of the accused is the undoubted law, axiomatic and elementary, and its enforcement lies at the foundation of the administration of our criminal law." Coffin v. United States, 156 U.S. 432, 453 (1895). I note, however, that the federal Supreme Court has held that the presumption of innocence "has no application to a determination of the rights of a pretrial detainee during confinement before his trial has even begun." Bell v. Wolfish, 441 U.S. 520, 533 (1979). In fact, in United States v. Salerno, 481 U.S. 739 (1987), the Court upheld several provisions of the Bail Reform Act of 1984 allowing for preventive pretrial detention without bail for certain federal defendants and noted several instances in which "the Government's regulatory interest in community safety can, in appropriate circumstances, outweigh an individual's liberty interest." Id. at 751; see also Ludecke v. Watkins, 335 U.S. 160, 173 (1948) (approving unreviewable executive power to detain enemy aliens in wartime); Moyer v. Peabody, 212 U.S. 78, 84–85 (1909) (rejecting due process claim of individuals jailed without probable cause by Governor in time of insurrection); Addington v. Texas, 441 U.S. 418, 432–33 (1979) (holding the government may detain mentally unstable individuals who present

what the Constitution says, and we are bound to uphold it until such time as the citizens of Indiana see fit to amend it.

I respectfully dissent.

Rucker, J., concurs in result.

---

a danger to the public upon a showing of clear and convincing evidence); Jackson v. Indiana, 406 U.S. 715, 738 (1972) (holding the government may hold a person charged with a crime and committed solely due to incapacity for a reasonable period of time to determine whether he will attain the capacity to stand trial); Schall v. Martin, 467 U.S. 253 (1984) (approving the post-arrest regulatory detention of juveniles when they present a continuing danger to the community); Gerstein v. Pugh, 420 U.S. 103, 114 (1975) (holding that if the police suspect an individual of a crime, they may arrest him without a warrant as long as they promptly bring him before a neutral magistrate to determine whether they have probable cause to hold him); Bell, 441 U.S. at 534 (noting an arrestee may be incarcerated until trial if he presents a risk of flight). While I acknowledge today's question is one of *Indiana* constitutional law, I find nothing in the Convention Debates or in our jurisprudence that dictates a contrary holding here. Indeed, where Indiana appellate courts have considered the interaction between the presumption of innocence and the right to bail, we have tended to agree with our federal colleagues. See, e.g., Hobbs v. Lindsey, 240 Ind. 74, 78, 81, 162 N.E.2d 85, 88–89 (1959) (stating that, although the accused enjoys the presumption of innocence prior to trial, he nevertheless must shoulder the burden to make a prima facie showing that the trial court has set his bail excessively high in violation of Ind. Const. art. 1, § 16, and only if he meets that burden must the State "show the necessity or justification for the unusual amount of bail required"); see also Mott v. State, 490 N.E.2d 1125, 1130 (Ind. Ct. App. 1986) (holding that trial courts are free to consider the potential penalty when setting bail and that such a consideration "does not impinge the presumption of innocence").

**Rucker, J., dissenting.**

In one fell swoop, today the Court overrules nearly 150 years of precedent and declares a 30-year-old statute unconstitutional. Because I am not prepared to go that far, I respectfully dissent.

First, the Court need not address the constitutional issue at all. Whatever may be said of the statutory burden of proof, the trial court in this case imposed upon the State the burden of establishing that Fry should be denied bail. And the trial court determined that the State carried its burden. The record supports the trial court's judgment, which this Court correctly affirms. In my view that should be the end of the matter. We need not inquire any further.

As for the merits, I applaud Justice David's scholarly research and in-depth analysis. But for ill or good, this State has charted a course different from that of some other jurisdictions. We have long held that in a murder case "the presumption is against the right to be admitted to bail, and the burden is on the [defendant] to show that the proof is not evident nor the presumption of his guilt strong." Phillips v. State, 550 N.E.2d 1290, 1294 (Ind. 1990); accord Partlow v. State, 453 N.E.2d 259, 274 (Ind. 1983); Caudill v. State, 311 N.E.2d 429, 430 (Ind. 1974); Bozovichar v. State, 103 N.E.2d 680, 681 (1952); State v. Hedges, 98 N.E. 417 (Ind. 1912); Schmidt v. Simmons, 36 N.E. 516 (1894); Ex parte Jones, 55 Ind. 176, 179-80 (1876). This view has not been without its detractors. In Ex parte Heffren, 27 Ind. 87 (1866), the first reported Indiana decision addressing who has the burden in these matters, Chief Justice Ray dissented: "I do not feel prepared to concur in so much of the ruling in this case as requires the petitioner to assume the burden of showing that he is entitled to be admitted to bail." Id. at 92. Nonetheless in this jurisdiction imposing the burden on the defendant has prevailed. The same is true for several other jurisdictions as well. See, e.g., Ex parte Wilding, 41 So. 3d 75, 76-77 (Ala. 2009); State v. Green, 275 So. 2d 184, 185-86 (La. 1973); Fischer v. Ball, 129 A.2d 822, 825-27 (Md. 1957); Huff v. Edwards, 241 So. 2d 654, 655-66 (Miss. 1970); Shaw v. State, 47 S.W.2d 92, 93 (Tenn. 1932).

Essentially, the understanding that a defendant charged with murder has the burden of showing that he is entitled to be admitted to bail has been the accepted and settled law in this jurisdiction for several decades. The doctrine of *stare decisis* requires that we apply "a principle of law which has been firmly established." Marsillett v. State, 495 N.E.2d 699, 704 (Ind. 1986). It is a maxim of judicial restraint supported by compelling policy reasons of continuity and predictability that we should be "reluctant to disturb long-standing precedent," id., and "a rule which has been deliberately declared should not be disturbed by the same court absent urgent reasons and a clear manifestation of error." Id. at 704-05 (citation omitted). Although disagreeing with our long-standing precedent, the majority has not demonstrated any *urgent* reason why the precedent should be abandoned. In like fashion the majority in my view has not shown that our long-standing precedent is clearly erroneous.

In any event we need not overrule existing precedent or declare the bail statute unconstitutional in the journey to chart a different course. Instead, again if a proper case were before us, then I would be in favor of harmonizing the statute in a way to uphold its constitutionality, and in the process distinguish rather than overrule existing precedent. This can be accomplished in my view by continuing to read the statute as imposing on the defendant "the burden of proof that he should be admitted to bail." Ind. Code § 35-33-8-2(b). But clarifying that this burden does not come into play until after the State first introduces evidence demonstrating "more likely than not," slip op. at 26, that the proof of the defendant's guilt is evident or the presumption of guilt strong. In essence, we would accomplish the same end result the majority reaches today, but without the collateral consequences.

Massa, J., concurs.