# Supreme Court of Florida

————————

No. SC19-1182

————————

**BRANDON THOURTMAN,**
Petitioner,

vs.

**DANIEL JUNIOR, etc., et al.,**
Respondents.

March 17, 2022

PER CURIAM.

In this case, we consider a question related to the application of the provision of article I, section 14 of the Florida Constitution that restricts entitlement to release on bail for persons "charged with a capital offense or an offense punishable by life imprisonment" when "the proof of guilt is evident or the presumption is great." Specifically, we consider whether that provision prohibits a trial court from detaining a defendant beyond first appearance for a reasonable time to conduct a hearing concerning whether the proof of guilt is evident or the presumption

of guilt is great unless the trial court makes a preliminary finding that the standard for denial of bail has been met.  We have for review *Thourtman v. Junior*, 275 So. 3d 726, 739 (Fla. 3d DCA 2019), in which the Third District Court of Appeal held that a trial court at first appearance, upon a finding of probable cause that the defendant committed a crime punishable by capital punishment or life imprisonment, may defer ruling on pretrial release and detain the defendant for a reasonable time to conduct a "full" *Arthur*[1] hearing without violating article I, section 14.  The Third District certified conflict with *Gray v. State*, 257 So. 3d 477, 478 (Fla. 4th DCA 2018), and *Ysaza v. State*, 222 So. 3d 3, 6 (Fla. 4th DCA 2017), both cases in which the Fourth District Court of Appeal interpreted the relevant portion of article I, section 14 as requiring a preliminary finding at first appearance that the proof of guilt is evident or the presumption is great to detain a defendant beyond first appearance in order to conduct a "full" *Arthur* hearing without setting reasonable conditions of pretrial release.  We have

---

1.  *State v. Arthur*, 390 So. 2d 717 (Fla. 1980).

jurisdiction. *See* art. V, § 3(b)(4), Fla. Const. We approve the Third District's holding in *Thourtman* and disapprove *Gray* and *Ysaza.*

## I. BACKGROUND

Article I, section 14 of the Florida Constitution guarantees every person charged with a crime the right to pretrial release on reasonable conditions, such as bail, with two exceptions: the "capital punishment or life imprisonment" exception set forth in the first sentence of article I, section 14 and the "pretrial detention" exception, set forth in the second sentence of article I, section 14. Article I, section 14 states:

> Unless charged with a capital offense or an offense punishable by life imprisonment and the proof of guilt is evident or the presumption is great, every person charged with a crime or violation of municipal or county ordinance shall be entitled to pretrial release on reasonable conditions. If no conditions of release can reasonably protect the community from risk of physical harm to persons, assure the presence of the accused at trial, or assure the integrity of the judicial process, the accused may be detained.

Art. I, § 14, Fla. Const.

Petitioner Brandon Thourtman was arrested for armed robbery with a firearm on November 9, 2018. The next day, at Thourtman's

first appearance,[2] the trial court reviewed the arrest affidavit, noted that Thourtman was charged with a crime punishable by life imprisonment, and announced "no bond," thereby deferring a decision on pretrial release pending an *Arthur* hearing, should Thourtman choose to request one.[3]

Thourtman was arraigned November 30, 2018, on one count of robbery using a firearm or deadly weapon, a first-degree felony punishable by life imprisonment. At that time, Thourtman entered a plea of not guilty and requested an *Arthur* hearing, which was set for December 6, 2018, four working days after the arraignment. The day before the scheduled *Arthur* hearing, Thourtman filed a

2. *See* Fla. R. Crim. P. 3.130(a), (d) (requiring that every arrested person shall be taken before a judge within 24 hours of arrest, at which time the judge shall proceed to determine conditions of release under rule 3.131). Rule 3.131(a) echoes the language of the first sentence of article I, section 14.

3. In doing so, the trial court followed the standard practice taught to trial judges in Florida. *See, e.g.,* Fla. Court Educ. Council, *Criminal Benchguide for Circuit Judges* at 7 (2016) ("In cases in which death or life imprisonment is a possible penalty, the first appearance judge, upon finding of probable cause, will typically order that the defendant be held with no bond. The defendant is then obligated to set the matter for an *Arthur* hearing.").

petition for a writ of habeas corpus in the Third District challenging his pretrial confinement.

The *Arthur* hearing was held as scheduled. At the conclusion of the hearing, the trial court found that the State's evidence that Thourtman committed a robbery rose to the level of "proof evident, presumption great," but the State's evidence that he used a firearm did not. Because unarmed robbery is not punishable by life, the court granted Thourtman pretrial release with conditions of house arrest and bail in the amount of $25,000. Although the grant of pretrial release after the *Arthur* hearing rendered Thourtman's habeas petition moot, the district court found that the petition presented a question capable of repetition yet evading review and nonetheless accepted jurisdiction to hear the merits.

Thourtman argued in the district court that the first sentence of article 1, section 14 creates a two-step procedure that begins with a preliminary finding at first appearance that the proof of guilt is evident or the presumption is great. This argument was based on the Fourth District's decisions in *Gray* and *Ysaza*. In those cases, the defendants were charged with crimes punishable by life imprisonment, and the first appearance courts ordered each

defendant detained without setting reasonable conditions of pretrial release or making a preliminary finding that the State's evidence rose to the level of "proof evident, presumption great." In both cases, the Fourth District concluded that the trial courts' refusals to authorize pretrial release or to make the required findings at first appearance that the proof of guilt was evident or the presumption great violated article I, section 14. *Gray*, 257 So. 3d at 478; *Ysaza*, 222 So. 3d at 6.[4]

The Fourth District

> explained that if the first appearance court finds that [the proof evident or presumption great] standard has been met and declines to set bond, the defendant can later move to set bond and request a full *Arthur* hearing, where the defendant has a right to present evidence and to ask the court to exercise its discretion to set bond.

*Gray*, 257 So. 3d at 478 (citing *Ysaza*, 222 So. 3d at 6).

The Third District disagreed with the Fourth District's interpretation of article 1, section 14 as requiring a preliminary finding at first appearance that the proof is evident or the presumption is great. The Third District noted that "there is

---

4. In neither the instant case nor *Gray* or *Ysaza* did the State seek to have the defendant detained under the second sentence of article I, section 14, and that provision is not implicated here.

nothing in the text [of article 1, section 14] that requires both a preliminary *Arthur* hearing at first appearance and a subsequent full *Arthur* hearing, as held by *Ysaza* and *Gray*" and that "[t]he right to 'pretrial release' in [a]rticle I, section 14 refers to release pending trial, not to release pending a constitutionally or legally required bond hearing." *Thourtman*, 275 So. 3d at 733.

Thourtman's "main argument" to the district court was that this Court, by stating in *Arthur*, "We hold, therefore, that before release on bail pending trial can ever be denied, the [S]tate must come forward with a showing that the proof of guilt is evident or the presumption is great," had interpreted article I, section 14 as creating the two-step procedure. *Id.* at 736 (quoting *Arthur*, 390 So. 2d at 720). The Third District rejected this argument, concluding that "if interpreted in such a manner, the sentence would comprise nothing more than classic obiter dicta," *id.*, because the sentence was written in answer to the second certified question in *Arthur*, which asked whether the accused or the State bore the burden of proving that the proof of guilt is evident or the presumption is great.

*Id.* at 737 (citing *Arthur*, 390 So. 2d at 719).[5]  In certifying conflict

with *Gray* and *Ysaza*, the Third District thus held

> that [a]rticle I, section 14 of the Florida Constitution does
> not prohibit the trial court the discretion at first
> appearance, upon a finding of probable cause that the
> defendant committed a crime punishable by capital
> punishment or life imprisonment, to defer ruling on bail
> and to detain the defendant for a reasonable time to
> conduct a full *Arthur* bond hearing.  To exercise such
> discretion, the court is not required by the Constitution
> to make a preliminary finding of "proof evident,
> presumption great."

*Id.* at 739.

## II.  ANALYSIS

Resolution of the conflict presented requires us to determine

whether the first sentence of article I, section 14 of the Florida

---

5.  The two certified questions in *Arthur* were:

1.  Does a trial court have discretion to grant bail to
a defendant who is charged with a capital offense or an
offense punishable by life imprisonment and the proof of
guilt is evident and the presumption great?

2.  Does the accused or the [S]tate, in a capital case
or a case involving life imprisonment where the accused
is seeking to be admitted to bail, have the burden of proof
on the issue of whether the proof of guilt is evident and
the presumption great?

*Arthur*, 390 So. 2d at 717.

Constitution prohibits a trial court from detaining a defendant beyond first appearance without setting reasonable conditions for pretrial release unless the court has made a preliminary finding that the proof of guilt is evident or the presumption is great. We conclude that it does not.

Thourtman asserts that for a court to detain a defendant beyond first appearance without setting reasonable conditions of pretrial release under the capital punishment or life imprisonment exception in the first sentence of article I, section 14, the State must have already met its burden of showing that the proof of guilt is evident or the presumption is great. Thourtman considers the right to pretrial release lost if reasonable conditions for pretrial release are not set at first appearance. In support of his position that detention beyond first appearance requires a preliminary finding that the proof of guilt is evident or the presumption is great, Thourtman relies on language in *Arthur* stating that "before release on bail pending trial can ever be denied, the [S]tate must come forward with a showing that the proof of guilt is evident or the presumption is great." *Arthur*, 390 So. 2d at 720. But Thourtman's view that the right to pretrial release is lost if reasonable conditions

of release are not set at first appearance and his reliance on *Arthur* are unwarranted.

We find no basis in the constitutional text or elsewhere in the law to support Thourtman's view that detaining a defendant beyond first appearance and deferring a ruling on pretrial release to conduct a "full"[6] *Arthur* hearing is tantamount to a loss of the right to pretrial release. Nor is there anything in the constitution or our caselaw that would require a trial court to make a preliminary finding that the proof is evident or the presumption is great before ordering a defendant detained pending an *Arthur* hearing, should the defendant choose to request one. The right to pretrial release is not lost until a court makes a definitive ruling on the issue of pretrial detention. The logic of Thourtman's argument that holding a defendant under the capital punishment or life imprisonment

---

6. A "full" *Arthur* hearing as described by the parties and the district court contemplates a hearing at which both parties are given ample opportunity to present their cases for and against pretrial release, and even where "the proof is evident or the presumption great that the accused committed a capital or life imprisonment offense, the accused may still come forward with a showing addressed to the court's discretion to grant or deny bail." *Arthur*, 390 So. 2d at 719. The idea that this describes a "full" *Arthur* hearing as opposed to a "preliminary" *Arthur* hearing, is a fallacy. There is only one type of hearing contemplated by *Arthur*.

- 10 -

exception prior to an *Arthur* hearing violates the first sentence of article I, section 14 would support the conclusion that detention of the same defendant between the time of arrest and first appearance would also necessarily violate article I, section 14, because a defendant typically has no right to pretrial release during that time.[7]  But as the district court recognized "it has never been held that requiring certain defendants by law to be detained until first appearance implicated rights under [a]rticle I, section 14." *Thourtman*, 275 So. 3d at 733 n.5.

Thourtman's reliance on the language in *Arthur* stating that "before release on bail pending trial can ever be denied, the [S]tate must come forward with a showing that the proof of guilt is evident or the presumption is great," *Arthur*, 390 So. 2d at 720, to support his position that a preliminary finding of proof evident, presumption great is required for detention beyond first appearance under the

---

7.  While defendants typically have no right to release prior to first appearance, a defendant may be able to obtain release before first appearance if a standard bail schedule is followed in the jurisdiction of the crime and arrest or, in the event of an arrest under a warrant, by meeting the conditions of release if any were set by the issuing judge.

capital punishment or life imprisonment exception does not withstand analysis. This is true because that language was written in response to the second certified question in *Arthur*: "Does the accused or the [S]tate, in a capital case or a case involving life imprisonment where the accused is seeking to be admitted to bail, have the burden of proof on the issue of whether the proof of guilt is evident and the presumption great?" *Id.* at 717. This Court's answer to that question was "that before the court can deny bail the [S]tate must have carried the burden of establishing that the proof of guilt is evident or the presumption great," *id.*, and later in the opinion, this Court restated its answer to the second question, using the slightly different language on which Thourtman relies, *id.* at 720 ("We hold, therefore, that before release on bail pending trial can ever be denied, the [S]tate must come forward with a showing that the proof of guilt is evident or the presumption is great."). Because the language relied on by Thourtman was written in response to the question of whether the accused or the State has the burden of proof on the issue of whether the proof of guilt is evident or the presumption is great, its purpose was not to announce a particular timeframe in which a ruling on pretrial

- 12 -

release must be made or that a deferred ruling on pretrial release is the equivalent of an unconstitutional denial of that right.

The question of whether a defendant may be detained under the first sentence of article 1, section 14 between first appearance and a hearing on a motion to set bail thus was not presented for the Court's consideration under the facts of *Arthur*, which arose after the defendant filed a motion to set bail and was afforded a hearing on the motion at which "the court received all evidence sought to be presented by Arthur." *Arthur v. Harper*, 371 So. 2d 96, 100 (Fla. 4th DCA 1978), *approved in part, quashed in part*, 390 So. 2d 717. Because the issue of detention beyond first appearance pending a bail hearing was not raised by the facts in *Arthur*, implicated by either of the certified questions in *Arthur*, or analyzed or discussed in *Arthur*, the language from *Arthur* relied on by Thourtman— despite the fact that it was self-described as a holding—constitutes dicta and does not control our decision here. *See State v. Yule*, 905 So. 2d 251, 259 n.10 (Fla. 2d DCA 2005) ("A holding consists of those propositions along the chosen decisional path or paths of reasoning that (1) are actually decided, (2) are based upon the facts of the case, and (3) lead to the judgment. If not a holding, a

proposition stated in a case counts as dicta.") (Canady, J., specially concurring) (quoting Michael Abramowicz & Maxwell Stearns, *Defining Dicta*, 57 Stan. L. Rev. 953, 1065 (2005)).

Beyond the fact that neither the constitution nor our caselaw expressly mandates that a trial court make a preliminary finding that the proof is evident or the presumption is great at first appearance, the imposition of such a requirement would be rife with impracticalities. For example, given the high level of evidence needed to meet the proof evident or presumption great burden—a burden that this Court has held to be even higher than the beyond a reasonable doubt standard required to obtain a conviction at trial, *see State ex rel. Van Eeghen v. Williams*, 87 So. 2d 45, 46 (Fla. 1956) (noting that "proof that guilt is evident or the presumption of guilt is great is actually a greater degree of proof than that which is required to establish guilt merely to the exclusion of a reasonable doubt" (citing *Russell v. State*, 71 So. 27, 28 (Fla. 1916)))—in many cases, it is highly unlikely that the State will have time before a first appearance to marshal its evidence, prepare exhibits for admission into evidence, and secure the attendance of witnesses needed to meet that burden. At the time of first appearance, it is typical that

the assistant State attorney who will prosecute has not been assigned. . . . [T]he "transcripts and affidavits" upon which the information will be based do not yet exist. The victim has not given a formal statement. [And m]uch of the physical evidence has not been collected, much less analyzed or tested.

*Thourtman*, 275 So. 3d at 735. This fact is not lost on Thourtman; he conceded below "that 'most often,' in fact 'in many, many cases,' the State will be simply unable to offer evidence rising to the level of 'proof evident, presumption great' at first appearance." *Id.* And in his initial brief in this Court, Thourtman stated, "The District Court below is not wrong that at first appearance the [S]tate is unlikely to be able to present evidence sufficient to satisfy the 'proof of guilt is evident or the presumption is great' standard." Initial Brief of [Petitioner] at 25.

Even assuming the State could by the time of a first appearance muster the necessary evidence and witnesses to meet a burden that exceeds the beyond a reasonable doubt burden required to obtain a conviction at trial after months or even years of preparation, in many, if not all, jurisdictions, it would be impractical or impossible to allot the State time during first appearance hearings to present the case required to meet this

heavy burden. As the district court noted, "In urban settings, first appearances occur on congested, fast-paced dockets. . . . Often, the defendant appears by video from jail. Defendants, of course, have a right to be heard, but experienced criminal lawyers and judges steer substantive motions relating to pretrial release to later, less congested calendars." *Thourtman*, 275 So. 3d at 734-735 (citing *Greenwood v. State*, 51 So. 3d 1278, 1281 (Fla. 2d DCA 2011) (noting the "practical realities" stemming from "the significant number of defendants present at the typical first appearance hearing on any given day in a busy urban court")). Even beyond "urban settings," in counties with fewer defendants on the first appearance docket, a court is unlikely to be able to clear its calendar for a preliminary *Arthur* hearing—which could take hours or even days—at the drop of a hat. And although Thourtman conceded below that "virtually always, the defendants at first appearance will also be unable to exercise their constitutional right to present evidence," *id.* at 730, assuming that a defendant were prepared to present his or her case for release at a "preliminary" *Arthur* hearing, a court would then likely find itself holding a "full"

- 16 -

*Arthur* hearing at first appearance, which Thourtman agrees "is neither constitutionally required nor practical," *id.* at 729.

Requiring a proof evident or presumption great finding at first appearance is also likely to thwart judicial economy. The probable lack of preparedness on either side can be expected to result in multiple hearings on the same subject matter. And to the chagrin of many judges who require the parties to attempt to come to an agreement on acceptable terms of pretrial release prior to an *Arthur* hearing, requiring an impromptu hearing at first appearance will lessen the chance that the parties will reach a stipulation that would resolve the matter without burdening the court with a potentially lengthy hearing.

### III. CONCLUSION

For the reasons explained, we approve the Third District's holding—

> that [a]rticle I, section 14 of the Florida Constitution does not prohibit the trial court the discretion at first appearance, upon a finding of probable cause that the defendant committed a crime punishable by capital punishment or life imprisonment, to defer ruling on bail and to detain the defendant for a reasonable time to conduct a full *Arthur* bond hearing

- 17 -

*id.* at 739—and disapprove the conflicting decisions of the Fourth

District in *Gray* and *Ysaza.*

It is so ordered.

CANADY, C.J., and POLSTON, LAWSON, MUÑIZ, COURIEL, and
GROSSHANS, JJ., concur.
COURIEL, J., concurs with an opinion, in which LAWSON, J.,
concurs.
LABARGA, J., dissents with an opinion.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION
AND, IF FILED, DETERMINED.

COURIEL, J., concurring.

I join the Court's opinion because the detention to which

Thourtman objects was supported by probable cause and

reasonable in duration. Justice Labarga contends that, in *State v.*

*Arthur*, 390 So. 2d 717 (Fla. 1980), we required that a trial court

make the "proof evident, presumption great" determination at a

defendant's first appearance hearing because we said such a

determination must be made "before release on bail can ever be

denied." *Id.* at 720. As the Court's decision explains, *Arthur*

contains no such requirement. A capital defendant may, at any

time prior to conviction, move for a hearing to determine whether

the State can carry its evidentiary burden and deny access to

- 18 -

pretrial release on reasonable conditions. Thourtman had that hearing four business days after he requested it.

I write separately to address what the dissent calls "the liberty interest protected by article I, section 14, of the Florida Constitution." We have said that provision "embodies the principle that the presumption of innocence abides in the accused for all purposes while awaiting trial." *Arthur*, 390 So. 2d at 719.

Though it may result in a denial of bail and in that very real sense affect a liberty interest of the defendant, a judge's ruling at the conclusion of an *Arthur* hearing does not mean the defendant is presumed guilty, even if the court finds the State has met the "proof evident, presumption great" standard. For an *Arthur* hearing, while it involves a proffer of what the evidence may be at trial, is not a trial at all. It is before a judge, not a jury. Its purpose is not to determine the defendant's guilt, but whether the defendant is eligible for bail, and if so, on what conditions. For these reasons, the deprivation of liberty in which it can result, temporary though it may be, must be supported by evidence that meets a more demanding standard of proof than even proof beyond a reasonable doubt, the jury's standard. *See Russell v. State*, 71 So. 27 (Fla.

1916); *State ex rel. Van Eeghen v. Williams*, 87 So. 2d 45, 46 (Fla. 1956).

In the case of a defendant charged with a capital offense, as with other defendants, probable cause supplies the first basis for the defendant's detention. Probable cause remains a basis for the defendant's detention until the jury supplies another basis upon which to adjudicate the defendant's right to liberty: its verdict. But in the case of a defendant charged with a capital offense or an offense punishable by life imprisonment, our constitution, like the constitutions of at least thirty-six other states, supplies another basis for detention—one about which, despite its long history, we have said relatively little.

# I

The Florida Constitution says:

> Unless charged with a capital offense or an offense punishable by life imprisonment and the proof of guilt is evident or the presumption is great, every person charged with a crime or violation of municipal or county ordinance shall be entitled to pretrial release on reasonable conditions. If no conditions of release can reasonably protect the community from risk of physical harm to persons, assure the presence of the accused at trial, or assure the integrity of the judicial process, the accused may be detained.

Art. I, § 14, Fla. Const. The plain language of this provision tells us that every defendant charged with a noncapital crime, or a crime for which the maximum punishment is less than life imprisonment, is entitled to pretrial release on reasonable conditions, if such conditions can reasonably protect the community from harm, assure the defendant will appear at trial, and assure the integrity of the judicial process. If conditions do not allow any one of those things, the defendant may be detained.

The provision also means that a different analysis applies when the crime charged is a capital offense or an offense punishable by life imprisonment, and the proof of guilt is evident or the presumption of guilt is great. *Id.* When these things are true, the defendant is not entitled to pretrial release on reasonable conditions, even if such conditions could keep the community safe, assure that the defendant would appear at trial, and assure the integrity of the judicial process.

## A

An accused's right to seek release on bail was settled as a matter of colonial jurisprudence prior to the founding.[8]  And, also prior to the founding, courts and legislatures qualified this right for capital defendants.  As early as 1682, the Fundamental Law of Pennsylvania held that "all prisoners shall be bailable by sufficient sureties, unless for capital offences, where the proof is evident, or the presumption great." Pa. Frame of Government of 1682, Laws Agreed Upon in England, art. XI (May 5, 1682); *see also* Caleb Foote, *The Coming Constitutional Crisis in Bail:  I*, 113 U. Pa. L. Rev. 959, 975 (1965) (tracking the history of the "proof evident, presumption great" standard).

This language found its way into the constitutions of many states[9] thanks in part to the Northwest Ordinance of

---

8.  4 William Blackstone, *Commentaries*, *296-97 (stating the common law rule that, after an arrest and a determination that the charge against the defendant "was [not] wholly groundless," the accused "must either be committed to prison, or give bail; that is, put in securities for his appearance, to answer the charge against him.  This commitment therefore being only for safe custody, wherever bail will answer the same intention, it ought to be taken; as in most of the inferior crimes:  but in felonies, and other offences

1787.  That act of Congress declared that inhabitants of a territory "shall always be entitled to the benefits of the writ of habeas corpus, and of the trial by jury . . . and of judicial proceedings according to the course of the common law," including bail, "unless for capital offenses, where the proof shall be evident or the presumption great."  An Ordinance for the Government of the Territory of the United States North-

---

of a capital nature, no bail can be a security equivalent to the actual custody of the person.  For what is there that a man may not be induced to forfeit, to save his own life?"); *see also Jennings v. Rodriguez*, 138 S. Ct. 830, 863 (2018) (Breyer, J., dissenting) (summarizing Blackstone and concluding that "American history makes clear that the settlers brought this practice [of allowing every prisoner (except for a convict serving his sentence) to seek release on bail] with them to America").

9.  Ala. Const. art. I, § 16; Alaska Const. art. I, § 11; Ariz. Const. art. II, § 22; Ark. Const. art. II, § 8; Cal. Const. art. I, § 12; Colo. Const. art. II, § 19; Conn. Const. art. I, § 8; Del. Const. art. I, § 12; Idaho Const. art. I, § 6; Ill. Const. art. I, § 9; Ind. Const. art. I, § 17; Iowa Const. art. I, § 12; Kan. Const. Bill of Rights, § 9; Ky. Const. Bill of Rights, art. I, § 16; La. Const. art. I, § 18; Me. Const. art. I, § 10; Mich. Const. art. I, § 15; Minn. Const. art. I, § 7; Miss. Const. art. 3, § 29; Mo. Const. art. I, § 20; Mont. Const. art. II, § 21; Neb. Const. art. I, § 9; Nev. Const. art. I, § 7; N.M. Const. art. II, § 13; N.D. Const. art. I, § 11; Ohio Const. art I, § 9; Okla. Const. art. II, § 8; Or. Const. art. I, § 14; Pa. Const. art. I, § 14; R.I. Const. art. I, § 9; S.D. Const. art. VI, § 8; Tenn. Const. art. I, § 15; Tex. Const. art. I, § 11; Vt. Const. ch. II, § 40; Wash. Const. art. I, § 20; Wyo. Const. art. I, § 14.

West of the River Ohio, July 13, 1787 (Northwest Ordinance), art. II. Any prospective state seeking to join the Union was required to acknowledge the Northwest Ordinance as part of its fundamental law upon admission.[10]

Florida was no exception. Upon its establishment in 1822, the territorial government of Florida was the subject of an act of Congress providing for its organization and administration. The act required:

> That, to the end that the inhabitants may be protected in their liberty, property, and the exercise of their religion, no law shall ever be valid, which shall impair, or in any way restrain, the freedom of religious opinions, professions, or worship. They shall be entitled to the benefit of the writ of habeas corpus. *They shall be bailable, in all cases except for capital offences where the proof is evident or the presumption great.* All fines shall be moderate and proportioned to the offence; and excessive bail shall not be required, nor cruel or unusual punishments inflicted. No ex post facto law, or law impairing the obligation of contracts, shall ever be

---

10. *See* Matthew J. Hegreness, *America's Fundamental and Vanishing Right to Bail,* 55 Ariz. L. Rev. 909, 937 (2013) ("Congress often imposed only two conditions on states in order for admittance into the Union: (1) that they be republican and (2) that their constitutions not be repugnant to the principles of the Northwest Ordinance."); Northwest Ordinance, art. I, § 11 (declaring that territorial governments "shall have authority to make laws in all cases, for the good government of the district, not repugnant to the principles and articles in this ordinance established and declared").

passed; nor shall private property be taken for public uses, without just compensation.

An Act for the Establishment of a Territorial Government in Florida, ch. XIII, § 10, 3 Stat. 654 (1822) (emphasis added). The inclusion of a qualified right to bail among other well-recognized rights—described in nearly the same words as the provision at issue today—speaks to its endurance in our constitutional conception of ordered liberty.

Florida's constitutions have each included a comparable bail provision. Our first constitution declared:

> That all persons shall be bailable, by sufficient securities, unless in capital offences, where the proof is evident, or the presumption is strong; and the privilege of habeas corpus shall not be suspended, unless when in case of rebellion or invasion, the public safety may require it.

Art. I, § 11, Fla. Const. (1838). The second constitution, written at the onset of the Civil War after Florida had abandoned the Union, copied this standard. Art. I, § 11, Fla. Const. (1861). The third constitution—penned and adopted by the Florida legislature after the surrender at Appomattox but rejected by Congress[11]—again

---

11. Eric Biber, *The Price of Admission: Causes, Effects, and Patterns of Conditions Imposed on States Entering the Union*, 46 Am. J. Legal Hist. 119, 143-144 (2004).

made no change to the bail standard, though it made minor alterations to the habeas corpus clause. Art. 1 § 11, Fla. Const. (1865).

The fourth constitution, under which Florida was ultimately readmitted to the Union, slightly changed the wording of the bail provision, but maintained essentially the same standard.[12] Adopting the precise language of the Northwest Ordinance—i.e., substituting "great" for "strong"—the 1868 constitution read: "All persons shall be bailable by sufficient sureties, unless for capital offenses when the proof is evident, or the presumption great." Declaration of Rights, § 7, Fla. Const. (1868). This language was retained in Florida's fifth constitution, the Reconstruction era constitution of 1885. *See* Declaration of Rights, § 9, Fla. Const. (1885). Florida's 1968 constitution expanded the bail provision to also include offenses punishable by life imprisonment, but otherwise maintained the "proof evident, presumption great" standard.

---

12. The clause protecting the privilege of habeas corpus, which until 1868 appeared in the same section as the bail provision, was moved to its own dedicated section. Declaration of Rights, § 5, Fla. Const. (1868).

In 1982, Florida voters approved an amendment to article I, section 14, adding a clause stating that "if no conditions of release can reasonably protect the community from risk of physical harm to persons, assure the presence of the accused at trial, or assure the integrity of the judicial process, the accused may be detained." Art. I, § 14, Fla. Const. (1968) (amended 1982).

The "proof evident, presumption great" standard has thus remained substantively unchanged throughout Florida's constitutional history. And for just as long, it has coexisted with the presumption of innocence.

**B**

"The principle that there is a presumption of innocence in favor of the accused is the undoubted law, axiomatic and elementary, and its enforcement lies at the foundation of the administration of our criminal law." *Coffin v. United States*, 156 U.S. 432, 453 (1895); *see also Fla. Bar v. Rose*, 823 So. 2d 727, 732 (Fla. 2002) ("[A] defendant is innocent until proven guilty, no matter what the charge and no matter how insidious the allegations."); *State v. Blair*, 39 So. 3d 1190, 1192 (Fla. 2010) ("Our criminal

justice system is based on the presumption that every person charged with a crime is innocent until proven guilty.").

The U.S. Supreme Court long ago resolved the tension between the availability of pretrial detention in some cases and the presumption of innocence in all. *See Bell v. Wolfish*, 441 U.S. 520, 533 (1979) ("The presumption of innocence is a doctrine that allocates the burden of proof in criminal trials; it also may serve as an admonishment to the jury to judge an accused's guilt or innocence solely on the evidence adduced at trial . . . . But it has no application to a determination of the rights of a pretrial detainee during confinement before his trial has even begun."). In this case as in *Bell*, neither party "question[s] that the Government may permissibly detain a person suspected of committing a crime prior to a formal adjudication of guilt" or "that the Government has a substantial interest in ensuring that persons accused of crimes are available for trials." *Id.* at 534.

That interest is distinct from the State's interest in seeing that those who have been convicted of crimes receive appropriate punishment; it is an interest in ensuring the administration of justice and ensuring public safety. Thus "the mere fact that

[Thourtman was] detained does not inexorably lead to the conclusion that the government has imposed punishment" for his alleged crime, nor made any judgment about his guilt. *United States v. Salerno*, 481 U.S. 739, 746-47 (1987) (citing *Bell*, 441 U.S. at 537). Article I, section 14, of our constitution reflects, as well as a concern for the presumption of innocence, a mindfulness that, as the Supreme Court put it with respect to the Bail Reform Act of 1984, "the Government's regulatory interest in community safety can, in appropriate circumstances," and for an appropriate time, "outweigh an individual's liberty interest." *Id.* at 748. Vindication of those interests at a bail hearing does not implicate the defendant's liberty interest in the presumption of innocence. *See Ex parte Tully*, 66 So. 296 (Fla. 1914).[13]

---

13. "In this [bail] proceeding it cannot be determined whether the petitioners are guilty or innocent of the capital offense charged against them, or of any offense. . . . The only question here presented for determination is whether 'the proof is evident or the presumption great' that each of the petitioners did [commit the alleged crime], so as to adjudge whether the petitioners are lawfully held in custody without bail, pending a trial in due course of law to legally determine their guilt or innocence of the alleged capital offense. No action taken on this application for bail should enter into the ultimate determination of the guilt or innocence of the petitioners." *Id.* at 297.

## II

The courts of states with constitutional provisions similar to article I, section 14, that have addressed the question have (apparently without exception) reasoned as the Court does today, concluding that a reasonable interval between first appearance and a "proof evident, presumption great" bail hearing for a capital defendant does not offend due process. In *State v. Passino*, 577 A.2d 281 (Vt. 1990), the Supreme Court of Vermont found a court "can hold a defendant charged with an offense punishable by life imprisonment without bail for such time as is necessary to enable the parties to prepare for a full bail hearing and to make appropriate motions," and concluded that a twelve-day delay between arraignment and commencement of a (three-day) bail hearing was reasonable. *Id.* at 382-84; *but see State v. Wade*, No. 2021-115, 2021 WL 2311957, at *1 (Vt. June 1, 2021) (unpublished) (holding that delaying a weight-of-the-evidence hearing for seven and a half weeks "[did] not meet the constitutional imperative").

Arizona's Court of Appeals relied on *Passino* in deciding whether an evidentiary hearing was required before determining, as

part of the decision whether to admit a defendant to bail, that "the proof is evident or the presumption great that [the defendant] is guilty of the offense and the offense charged is a capital offense." *Simpson v. Owens*, 85 P.3d 478, 481 (Ariz. Ct. App. 2004). It held that it was, and that "[i]t would be a rare occasion when an adequate bail hearing could be conducted at the initial appearance" for a capital or life-eligible offense. *Id.* at 495.

In *Fry v. State*, 990 N.E.2d 429 (Ind. 2013), the Supreme Court of Indiana held that, in the case of a capital defendant, the state bears the burden of proof at a bail hearing to "show—by a preponderance of the evidence—that the proof is evident or the presumption strong." *Id.* at 451. In reasoning to that conclusion, it noted that the defendant's state of incarceration prior to the hearing was a substantial consideration in placing the burden on the state, contemplating that the defendant would in fact be in custody for some time prior to admission to bail.

And in *State v. Kastanis*, 848 P.2d 673 (Utah 1993), reaffirming a prior holding that a capital defendant must be allowed a bail hearing under that state's "proof evident, presumption strong" constitutional provision, the Utah Supreme Court stated

- 31 -

that the defendant would have an opportunity to "bring his own evidence and witnesses and . . . cross-examine the State's witnesses. Defendant must be given adequate notice to prepare for the hearing," a tall order at first appearance. *Id.* at 676.[14]

14. Finally, contrary to the dissent's reading of Florida Rule of Criminal Procedure 3.130(d), our criminal law and rules of procedure do not require a "proof evident, presumption great" determination at first appearance. True, that rule, entitled "First Appearance," does say "[t]he judge shall *proceed to* determine conditions of release pursuant to rule 3.131," but it also says the judge "may release the offender with or without bail *to await further hearing* . . . relating to pretrial detention and release." *Id.* at 3.130(d)(2) (emphasis added). The rule's use of the words "proceed to" and contemplation of a later hearing on bail is in sharp contrast to what the rules say about something indisputably required at first appearance: appointment of counsel. *See* Fla. R. Crim. P. 3.130(c)(1) ("When the judge determines that the defendant is entitled to court-appointed counsel and desires counsel, the judge shall *immediately* appoint counsel. This determination *must* be made and, if required, counsel appointed *no later than the time of the first appearance*.") (emphasis added). There is also the fact the State has five days from the filing of a complaint to seek pretrial detention, during which time a defendant may be detained pending a hearing. § 907.041(4)(f), Fla. Stat. (2021). This rule, applicable to noncapital or life-eligible defendants, would be hard to square with a requirement that the State muster its evidence more quickly for a defendant whose risk of flight or potential danger to the community is greater.

## III

Today's decision does nothing to lessen the liberty interest at the heart of article I, section 14 of our constitution, the presumption of innocence.

LAWSON, J., concurs.

LABARGA, J., dissenting.

An accused person is "entitled to pretrial release on reasonable conditions." Art. I, § 14, Fla. Const. Only pursuant to limited exceptions may a court deny pretrial release; for instance, if the accused is "charged with a capital offense or an offense punishable by life imprisonment and the proof of guilt is evident or the presumption is great." *Id.*

To that end, this Court has explained: "[B]efore release on bail pending trial *can ever* be denied, the [S]tate must come forward with a showing that the proof of guilt is evident or the presumption is great." *State v. Arthur*, 390 So. 2d 717, 720 (Fla. 1980) (emphasis added). In my view, the Fourth District Court of Appeal properly interpreted this language as requiring that the trial court make the "proof evident, presumption great" determination at an accused person's first appearance hearing. However, the majority attempts

- 33 -

to lessen the import of *Arthur* by reasoning: "Because [this] language . . . was written in response to the [certified] question of whether the accused or the State has the burden of proof on the issue of whether the proof of guilt is evident or the presumption is great, its purpose was not to announce a particular timeframe . . . ." Majority op. at 12. Such reasoning is insufficient to discount this Court's definitive statement in *Arthur* that the trial court must make a "proof evident, presumption great" determination "before release on bail pending trial *can ever* be denied." *Arthur*, 390 So. 2d at 720. Consequently, I dissent to today's decision, which holds that a defendant may be detained beyond first appearance without a trial court making a preliminary "proof evident, presumption great" determination. *See* majority op. at 9, 18.

Florida Rule of Criminal Procedure 3.130(d) requires that at first appearance, "[t]he judge *shall* proceed to determine conditions of [pretrial] release pursuant to rule 3.131." (Emphasis added.) In a case involving a capital offense or an offense punishable by life imprisonment, it is incumbent upon the trial court to determine whether the proof of guilt is evident or the presumption is great because the accused person's conditions of pretrial release cannot

- 34 -

be determined in compliance with rule 3.130(d) without doing so.

Despite the majority's suggestion that it is impractical for a court to make a "proof evident, presumption great" determination at first appearance, a preliminary determination is not typically as labor intensive as the majority suggests. As observed by the Fourth District Court of Appeal in *Gray*[15] and *Ysaza*,[16] the determination may be made by reviewing a probable cause affidavit. Because only capital offenses and offenses punishable by life imprisonment are implicated by the "proof evident, presumption great" standard, a probable cause affidavit usually contains sufficient evidence to permit the trial court to make a determination.

Thourtman's case illustrates the importance of making a "proof evident, presumption great" determination at first appearance. Thourtman was accused of committing armed robbery, an offense punishable by life imprisonment. Following his first appearance, Thourtman was held without bond until his arraignment three weeks later, at which time he requested an

---

15. *Gray v. State*, 257 So. 3d 477, 478 (Fla. 4th DCA 2018).

16. *Ysaza v. State*, 222 So. 3d 3, 6 (Fla. 4th DCA 2017).

*Arthur* hearing that was held several days later. The trial court concluded at the end of the *Arthur* hearing that the evidence of robbery satisfied the "proof evident, presumption great" standard, but it also concluded that there was insufficient evidence to support the allegation that Thourtman used a firearm during the robbery. Because the charge of robbery without a weapon is not punishable by life imprisonment, the court was obligated to grant Thourtman pretrial release.

Because a "proof evident, presumption great" determination at first appearance is consistent with the liberty interest protected by article I, section 14, of the Florida Constitution, I would approve the decisions in *Gray* and *Ysaza*, and disapprove the Third District Court of Appeal's decision in *Thourtman*.[17] Respectfully, I dissent.

Application for Review of the Decision of the District Court of Appeal Certified Direct Conflict of Decisions

Third District – Case No. 3D18-2433

(Miami-Dade County)

Carlos J. Martinez, Public Defender, Maria E. Lauredo, Chief Assistant Public Defender, and John Eddy Morrison, Assistant Public Defender, Eleventh Judicial Circuit, Miami, Florida,

---

17. *Thourtman v. Junior*, 275 So. 3d 726 (Fla. 3d DCA 2019).

for Petitioner

Ashley Moody, Attorney General, Tallahassee, Florida, Michael Mervine, Bureau Chief, Magaly Rodriguez and Asad Ali, Assistant Attorneys General, Miami, Florida,

for Respondent, State of Florida